COBURN v FOX

Docket No. 63048. Submitted January 11, 1984, at Detroit.—Decided
     April 30, 1984. Leave to appeal applied for.

     Plaintiffs, David Coburn, administrator of the estate of Robert H.
     Coburn, deceased, and Roberta Wrona, administratrix of the
     estate of Jeanne M. Coburn, deceased, brought a wrongful
     death action in the Macomb Circuit Court against defendant
     Gordon J. Fox. The decedents died in an automobile accident
     with the defendant on October 14, 1973. As a result of the
     action, the plaintiffs were awarded $40,000 against defendant
     Fox. Plaintiffs thereafter petitioned the court for an order to
     show cause against garnishee-defendant, Progressive Casualty
     Insurance Company, the insurer for defendant Fox at the time
     of the accident. The insurer denied liability based upon the lack
     of cooperation of its insured, claiming that said lack of cooperation
     constituted a breach of the insurance contract. The trial court,
     Robert J. Chrzanowski, J., entered an order denying plaintiff's
     petition. The court ruled that the insurer was actually prejudiced
     due to Fox's noncooperation and that the insurer was not obligated
     to pay plaintiffs under its policy. Plaintiffs appeal. Held:

     1. The trial court erred in ruling that garnishee-defendant
     had a valid defense to plaintiff's garnishment action.

     2. Where the insurance is mandatory, as under Michigan's
     no-fault automobile insurance law, the insured's noncoopera-
     tion is not a defense to a third-party garnishment action.

     3. Where insurance coverage is mandatory, the risk of nonre-
     covery should be placed on the insurance company and not on
     the victim. Garnishee-defendant is not without a right of recov-
     ery because it has the right to sue Fox for breach of contract.

     Reversed and remanded.

REFERENCES FOR POINTS IN HEADNOTES
[1] 7A Am Jur 2d, Automobile Insurance § 464.
     44 Am Jur 2d, Insurance § 1454.
     Failure to give notice, or other lack of co-operation by insured, as
        defense to action against compulsory liability insurer by injured
        member of the public. 31 ALR2d 645.
[2] 7 Am Jur 2d, Automobile Insurance §§ 23, 34, 341.

1. INSURANCE — AUTOMOBILES — ACTIONS — THIRD-PARTY ACTIONS —
   DEFENSES — MANDATORY INSURANCE COVERAGE.

   An insured's noncooperation is not a defense available to the
   insurer of an automobile in a third-party garnishment action
   where the insurance involved is mandatory; where insurance
   coverage is mandatory, the risk of nonrecovery should be
   placed on the insurance company and not on the third-party
   victim.

2. INSURANCE — AUTOMOBILES — NO-FAULT INSURANCE — MANDA-
   TORY INSURANCE COVERAGE.

   Michigan's no-fault automobile insurance act makes automobile
   insurance mandatory; the act was passed to provide compensa-
   tion for people injured in automobile accidents on Michigan
   highways and applies to accidents which occur on or after
   October 1, 1973 (MCL 500.3101, 500.3179; MSA 24.13101,
   24.13179).

*Robert L. Coburn,* for plaintiffs.

*Ulanoff, Ross, Summer & Wesley, P.C.* (by *Steven E. Sattler),* for garnishee-defendant.

Before: WAHLS, P.J., and R. M. MAHER and C. W. SIMON, JR.,* JJ.

R. M. MAHER, J. On March 16, 1981, plaintiffs were awarded $40,000 in their wrongful death action against defendant. On February 15, 1982, the trial court entered an order holding garnishee-defendant not liable. Plaintiffs appeal by leave granted.

On October 14, 1973, plaintiffs' decedents died in a car accident with defendant. At that time, garnishee-defendant insured defendant's car. Just less than three years later, plaintiffs sued. Although garnishee-defendant provided counsel and was willing to defend the suit, defendant allegedly did not cooperate. Not only did he fail to appear at his deposition, but, among other things, he failed to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

appear for trial. Garnishee-defendant's insurance policy with defendant contained the following clause as a condition precedent to its own liability:

"The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits * * * and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses."

For purposes of this appeal, we will assume that defendant violated this cooperation clause in his contract.

Garnishee-defendant argues, and the trial court ruled, that, provided garnishee-defendant was actually prejudiced due to defendant's noncooperation, it is not obligated to pay plaintiffs under its policy. This principle was followed in *Allen v Cheatum,* 351 Mich 585; 88 NW2d 306 (1958). However, the accident in *Allen* occurred in 1951. In 1972 Michigan enacted 1972 PA 294 making automobile insurance mandatory. MCL 500.3101; MSA 24.13101. The act applies to accidents occurring on or after October 1, 1973. MCL 500.3179; MSA 24.13179. Therefore, *Allen* does not apply in this case:

"When the proceeds of a policy which a claimant seeks to reach come from a noncompulsory insurance policy, any defense available to the insurer against the insured is also available against the claimant because the claimant has no greater rights than the insured. Thus, the general rule is that unless a policy can be construed as creating an independent right of action for the claimant, his rights to recover are subject to such defenses as the insurer may have against the insured.

"An entirely different situation arises, however, when states enact statutes which require liability insurance or prescribe their format. Liability policies issued in

compliance with such statutes have as their primary purpose the protection of the public. One recent case noted that the primary purpose of compulsory automobile insurance is to provide security for payment of damages to travelers on public highways and not to protect the owner or driver from financial loss. The purpose of the financial security laws is the protection of passengers and members of the public who may be injured by the negligence of the motor vehicle operators. The prevailing view is that policies issued in compliance with such acts are for the benefit of the traveling public and insurers will not be relieved by the failure of the insured to cooperate. Another court has held that under a financial responsibility act the injured party's right of recovery is not derived from the insured but is created by statute and becomes absolute upon the occurrence of an injury which is covered by the policy. *In cases involving required insurance, the insurer may not assert noncooperation as a defense to an action or garnishment proceedings brought by an injured member of the public within the class sought to be protected by the applicable financial responsibility statute.*" 2 Long, Law of Liability Insurance, § 14.19, pp 14-51—14-52. (Footnotes omitted; emphasis added.)

The same principle was stated in Anno: *Failure to give notice, or other lack of cooperation by insured, as defense to action against compulsory liability insurer by injured member of the public,* 31 ALR2d 645, 647:

"[M]ost of the cases * * * recognize that failure to give notice of an accident, or other lack of co-operation on the part of the insured, does not constitute a defense to an action by an injured member of the public to recover from the insurer, where the policy or bond was procured in compliance with a general compulsory liability or financial responsibility insurance statute, such statutes being for the benefit of members of the public, and not of the insured."

Among the cases that have taken this position are

*Huse v Fulton,* 678 F2d 132 (CA 11, 1982); *Young v Allstate Ins Co,* 248 Ga 350; 282 SE2d 115 (1981); *National Indemnity Co v Simmons,* 230 Md 234; 186 A2d 595 (1962); *Rowley v Diaryland Ins Co, Inc,* 44 Or App 333; 605 P2d 1356 (1980); *Tibbs v Johnson,* 30 Wash App 107; 632 P2d 904 (1981).[1] See also cases cited in *Tibbs.*

In Michigan, the present no-fault automobile insurance laws were passed to provide compensation for people injured in automobile accidents on Michigan highways. *Belcher v Aetna Casualty & Surety Co,* 409 Mich 231, 240; 293 NW2d 594 (1980); *Shavers v Attorney General,* 402 Mich 554; 267 NW2d 72 (1978); *Dolson v Secretary of State,* 83 Mich App 596, 599; 269 NW2d 239 (1978). In *Shavers* the Supreme Court explained that:

"The Michigan No-Fault Insurance Act, which became law on October 1, 1973, was offered as an innovative social and legal response to the long payment delays, inequitable payment structure, and high legal costs inherent in the tort (or 'fault') liability system. The goal of the no-fault insurance system was to provide victims of motor vehicle accidents *assured, adequate, and prompt reparation* for certain economic losses. The Legislature believed this goal could be most effectively achieved through a system of *compulsory* insurance, whereby every Michigan motorist would be required to purchase no-fault insurance or be unable to operate a motor vehicle legally in this state. Under this system, victims of motor vehicle accidents would receive insurance benefits for their injuries as a substitute for

---

[1] Although the accident in *Burgess v American Fidelity Fire Ins Co,* 107 Mich App 625; 310 NW2d 23 (1981) occurred after 1973, the case is not on point. The issue was not whether or not the insurer has a defense to a garnishment action because the insured failed to cooperate as required by the contract. Instead, it dealt with whether or not the defendant insurance company was sufficiently prejudiced. Apparently, the plaintiff did not argue the issue argued in the present case.

their common-law remedy in tort." 402 Mich 578-579 (emphasis added).

In determining that the no-fault act is constitutional, the Supreme Court stated:

"This principle, that those who use the public highways may properly be required to provide security for loss that may predictably be suffered by others on account of such use, can properly be extended to require security for the loss that the state itself might otherwise incur on account of such use." 402 Mich 596-597.

Therefore, the trial court erred in ruling that garnishee-defendant has a valid defense to plaintiffs' garnishment action. Where the insurance is mandatory, the insured's noncooperation is not a defense to a third-party garnishment action.

In its opinion, the trial court stated:

"Insurance coverage is not a matter of strict liability where the only hindrance in presenting valid defenses to a claim is the intransigence of the insured. To so hold would be to render the issuance of automobile insurance coverage into a game of Russian roulette, totally dependent upon the whims of an insured. It is not at all unlikely that insurance companies would refuse to issue insurance under such circumstances, inasmuch as insurers are legitimately concerned with a profit motive. See *Shavers v Attorney General,* 402 Mich 554, 601; 267 NW2d 72 (1978). The spectre that such a consequence would totally eviscerate the no-fault system and the rights of its intended beneficiaries compels a conclusion that it was not the intent of the Legislature to abolish noncooperation clauses in insurance contracts.

"Moreover, there is the problem of enforcement of discovery orders. At present, the noncooperation clause is a legitimate lever of power by which the insurer may obtain the cooperation of a reluctant insured. If the

insured refuses to cooperate, he runs the risk of losing his coverage under the policy because of breach of contract.

"An abolition of the noncooperation clause would force courts to have to attempt to compel insureds to cooperate. This would enormously aggravate the already crowded dockets of the courts; would seriously jeopardize the ethics of defense attorneys by forcing them to adopt two opposing positions between the insured and the insurer; and would, in short, create unimaginable legal chaos. Again, the court cannot conceive that such a result was the intent of the Legislature in enacting the no-fault act."

We disagree with this assessment. Today's decision does not invalidate noncooperation clauses. Not only is garnishee-defendant not liable to defendant under the contract, but it still has the right to sue defendant for breach of contract. This right provides the necessary incentive for the insured to comply with the issuance contract. Yet, our decision does so without jeopardizing the victim's right to recovery. Where insurance coverage is mandatory, the risk of nonrecovery should be placed on the insurance company and not on the victim.

Reversed and remanded for entry of judgment consistent with this opinion.