## COBURN v FOX

Docket No. 74502. Argued November 13, 1985 (Calendar No. 7).
Decided July 8, 1986. Rehearing denied 426 Mich 1232.

David Coburn, administrator of the estate of Robert H. Coburn,
deceased, and Roberta Wrona, administratrix of the estate of
Jeanne M. Coburn, deceased, brought an action in the Macomb
Circuit Court against Gordon J. Fox, the driver of an automo-
bile involved in an accident in which the Coburns were killed,
and Progressive Casualty Insurance Company, his no-fault
insurer. Prior to and during trial, Fox refused to coöperate with
his insurer in defense of the action. The court granted sum-
mary judgment for the plaintiffs as to liability and, following
presentation of proofs, awarded damages. Following entry of
judgment, the insurer refused payment on the ground that
under the terms of Fox's insurance contract, his failure to
coöperate in defending the claim relieved it of liability. The
plaintiffs then obtained an order commanding the insurer to
show cause why it should not be ordered to pay the full amount
of the judgment. Following a hearing, the court, Robert J.
Chrzanowski, J., dismissed the order to show cause, finding that
Fox's failure to coöperate conclusively constituted a breach of
the insurance contract prejudicial to the insurer, and that the
insurer's demonstration of due diligence in attempting to se-
cure Fox's coöperation and the actual prejudice resulting from
the lack of coöperation constituted a valid defense. The Court
of Appeals, WAHLS, P.J., and R. M. MAHER and SIMON, JJ.,
reversed, holding that the insurer had adequate remedies
against Fox without penalizing the plaintiffs and that, where
insurance coverage is mandatory, the risk of nonrecovery
should be placed on the insurance company and not on the
victim (Docket No. 63048). The insurer appeals.

In an opinion by Justice CAVANAGH, joined by Chief Justice
WILLIAMS and Justices LEVIN, BRICKLEY, BOYLE, and RILEY, the
Supreme Court held:

A no-fault insurer is not relieved of liability to pay benefits

REFERENCES

Am Jur 2d, Automobile Insurance §§ 340 et seq.
Validity and construction of "no-fault" automobile insurance plans.
42 ALR3d 229.

for injuries covered by a no-fault policy because of the noncoöperation of an insured in defending the claim. Because of the compulsory nature of liability insurance, noncoöperation of an insured is not a defense in an action between a third-party victim and an insurer to the extent of the minimum residual liability insurance.

1. Personal injury protection and residual liability insurance is compulsory under the no-fault act so as to protect the public at large from damages resulting from automobile accidents. Under the Motor Vehicle Accident Claims Act, the predecessor of the no-fault act, a driver could elect not to purchase insurance, and persons injured in an accident involving an uninsured motorist could recover from the Motor Vehicle Accident Claims Fund. While a noncoöperation clause might have been valid where insurance was optional, where insurance is compulsory and an injured third person seeks recovery, failure of the insured to coöperate is not a valid defense.

2. In this case, the decedents were members of a class intended to be protected by the no-fault act. To allow the insurer to successfully assert a defense of noncoöperation would deny this protection. The insurer must pay the judgment against its insured regardless of any dispute as to the noncoöperation of the insured under the insurance contract.

Affirmed.

Justice ARCHER took no part in the decision of this case.

134 Mich App 190; 350 NW2d 852 (1984) affirmed.

INSURANCE — NO-FAULT — NONCOÖPERATION CLAUSES.

A no-fault insurer is not relieved of liability to pay benefits for injuries covered by a no-fault policy because of the noncoöperation of an insured in defending the claim; because of the compulsory nature of liability insurance, noncoöperation of an insured is not a defense in an action between a third-party victim and an insurer to the extent of the minimum residual liability insurance (MCL 500.3131 *et seq.;* MSA 24.13131 *et seq.*).

*Robert L. Coburn, P.C.,* for the plaintiffs.

*Faintuck, Shwedel & Wolfram* (by *William G. Wolfram*) for Progressive Casualty Insurance Company.

Amicus Curiae:

*Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick* (by *Richard E. Shaw* and *Monica F. Linkner*) for Michigan Trial Lawyers Association.

CAVANAGH, J. The issue in the present case is whether the enactment of the Michigan no-fault insurance act[1] invalidates any provision in a no-fault contract relieving the insurer of liability should the insured fail to coöperate in defending a claim by an injured third party. Progressive Casualty Insurance Company argues that such clauses are valid in Michigan under *Allen v Cheatum,* 351 Mich 585; 88 NW2d 306 (1958). Plaintiffs argue that allowing insurers a defense of noncoöperation leaves the injured third party without the protection mandated by the no-fault act.

### FACTUAL BACKGROUND

The parties stipulated to the following facts:

Robert H. Coburn and his wife, Jeanne, were killed in an automobile accident on October 14, 1973. Prior to Mr. and Mrs. Coburn's automobile running off the road and striking a tree, it had come into contact with an automobile being driven by Defendant, Gordon Fox. No one in the Coburn vehicle survived. Witnesses to the accident included Defendant, passengers in Mr. Fox's car, and another driver on the same roadway who was a short distance away from the scene of the accident. Notice of intention to make a claim was given to Mr. Fox's insurance carrier, Progressive Casualty Insurance Company, shortly after the accident. Settlement negotiations were carried on with the carrier thereafter.

Suit was commenced in Macomb County Circuit Court on October 1, 1976, alleging that Mr. Fox

---

[1] MCL 500.3131 *et seq.;* MSA 24.13131 *et seq.*

was negligent in the accident which caused the deaths of Mr. and Mrs. Coburn. Service could not be made upon Mr. Fox at that time due to the fact that he was a member of the armed forces serving in a foreign country. The matter was placed upon the Macomb County Circuit Court military docket and substitute service on the Secretary of State was authorized by the Court pursuant to the General Court Rules.

When Mr. Fox returned from service, he was served with the Summons and Complaint personally. His insurance company, Defendant-Appellee herein, employed counsel to represent him as required by his policy of insurance.

*One condition of the insurance policy required Mr. Fox's coöperation during the lawsuit. The condition, in part, provided: "The insured shall coöperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits . . . and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses."* Mr. Fox was notified from the beginning of the lawsuit that his coöperation was required. By letter dated April 4, 1979, Defendant-Appellee informed Mr. Fox that he was to "notify us immediately in the event of a change in your address so we may reach you promptly at any time particularly since your full coöperation is a requirement of the policy."

The lawsuit proceeded in the usual fashion with counsel employed by the Defendant's insurance carrier, Progressive Casualty Insurance Company, representing Defendant. Said counsel took the deposition of David B. Coburn, Administrator of Plaintiff's estate. Mr. Fox's deposition was noticed twice but he failed to appear both times. Mr. Fox was notified of the first deposition, scheduled for April 21, 1980, by a letter dated April 7, 1980, sent by certified mail, return receipt requested. The letter requested that Mr. Fox call his attorney to confirm his attendance at the deposition. Mr. Fox signed the return receipt, but failed to contact his attor-

ney at any time and also failed to appear at the deposition. As a result, the deposition was cancelled and rescheduled for June 3, 1980. Again, Mr. Fox was notified of the deposition by certified mail, return receipt requested, sent April 24, 1980. The letter was returned to Mr. Fox's attorney and Mr. Fox again failed to appear at his deposition. Due to the failure of Mr. Fox to appear, Plaintiffs brought an action under the Court Rules to limit his testimony at the time of trial. An Order was entered on June 16, 1980, denying any direct examination testimony by Mr. Fox at trial. The Order stated that "The Defendant, Gordon James Fox, has refused and failed to coöperate with his counsel and submit him to Plaintiff's attorney for deposition upon oral examination." After this Order was entered Defendant's insurance carrier sent a certified letter, return receipt requested, to Mr. Fox, advising him of the ramifications of his failure to coöperate.

The carrier then proceeded to send its investigator to the insured's residence. The investigator spoke with Mr. Fox's brother and advised him that it was imperative that Mr. Fox contact the insurer or coverage may be dropped. The investigator left his card with both the insurer's phone number and Mr. Fox's attorney's phone number on it. Mr. Fox never contacted either party. A second visit was made by the carrier on October 22, 1980, and again, Mr. Fox's brother indicated that Mr. Fox was not home.

In the meantime, a February 4, 1981 trial date was set by the Court. Attempts were made to procure Mr. Fox's attendance at trial. Mr. Fox was sent a letter by certified mail, return receipt requested, on January 5, 1981, wherein Mr. Fox was informed of the February 4, 1981 trial date. Mr. Fox never contacted his attorney in response to the letter. A subpoena was also issued, ordering Mr. Fox to appear on February 4, 1981, for trial. The Proof of Service indicating that the process server was unable to serve Mr. Fox, was filed with the Macomb County Circuit Court.

On the scheduled trial date of February 4, 1981, Plaintiffs moved to strike Defendant's Answer and Special Affirmative Defenses. The motion was granted. The Court's Order also granted Summary Judgment as to liability, only, against Mr. Fox. The Court thereafter adjourned the trial date until March 16, 1981.

Attempts were made to procure Mr. Fox's attendance at the March 16, 1981 trial date. A certified letter was sent to Mr. Fox on March 11, 1981, and went unanswered. The matter thereafter proceeded to trial on the question of damages, only, on the aforesaid March 16, 1981 date. Plaintiffs waived a jury and proofs regarding damages were presented to the Court. The Court entered Judgment in favor of Plaintiff-decedent, Robert H. Coburn's estate in the amount of $20,000.00 and in favor of Plaintiff-decedent, Jeanne Coburn's estate in the amount of $20,000.00, plus costs, mediation sanctions, and interest.[2]

Written Judgment in the above amounts was entered with the Court on the record on March 19, 1981.

Counsel employed by the Garnishee Defendant insurance carrier appeared at all hearings and represented Defendant, Fox. Up until this time, no notice of denial of coverage under the policy or the imposition of policy defenses to deny payment was ever given by said defendant insurance carrier to Plaintiffs.

After Judgment had been entered, Plaintiffs' counsel called upon the insurance carrier to pay same. The carrier refused payment, relying upon the failure of their insured to coöperate in the defense of the case. Plaintiffs thereupon served the Defendant carrier with a Garnishment for the Judgment amount, including interest and costs, in

---

[2] The minimum residual liability coverage mandated by the no-fault act is $20,000 for injury to one person in one accident or $40,000 for injury to two or more persons in one accident. Mr. Fox's no-fault policy was limited to this minimum coverage. The trial court awarded plaintiffs $40,000 plus costs, mediation sanctions, and interest. MCL 500.3131; MSA 24.13131, MCL 500.3009(1); MSA 24.13009(1).

the amount of $56,227.00. A Return of Garnishment was made showing no liability, based upon the lack of coöperation of insured Fox, said lack of coöperation constituting a breach of the insurance policy. Plaintiffs procured an Order commanding that the Garnishee Defendant appear for purposes of discovery on June 22, 1981. After testimony on July 29, 1981, the deposition of Thomas Upchurch, Progressive's Branch Manager, was taken. On August 20, 1981, the deposition of Thomas Reband, Claims Representative for Progressive, was also taken. Plaintiffs procured an Order commanding the Garnishee Defendant appear and show cause why it should not be ordered to pay the full amount of the Judgment, plus costs, interest and fees.

Upon hearing on the Order to Show Cause, held September 21, 1981, the Court ordered that each party submit Briefs with respect to their positions and thereafter the Court rendered an Opinion dismissing the said Order to Show Cause. The Court found, in its Opinion, that Fox's actions conclusively constituted a breach of the Progressive insurance policy coöperation condition, and that such breach was prejudicial to Progressive. . . .

Thereafter, an Order Denying the Order to Show Cause was entered on February 25, 1982. [Emphasis added.]

The trial court found that Fox's failure to coöperate resulted in a default summary judgment as to liability in plaintiffs' favor despite evidence that decedents may have been at fault. It held that Fox's acts constituted a breach of his insurance policy and were prejudicial to defendant-insurer. The showing by defendant-insurer of due diligence in attempting to secure Fox's coöperation and the actual prejudice resulting from Fox's noncoöperation was found to constitute a valid defense under *Allen v Cheatum, supra.*

The Court of Appeals did not question the determination by the trial court that Fox had violated this clause in his contract. Nor did the Court discuss whether or not the insurer had used due diligence in attempting to secure Fox's coöperation or whether the default judgment constituted actual prejudice to the insurer under *Allen v Cheatum.* Rather, it held that the enactment of Michigan's no-fault law in 1972 made *Allen* inapplicable. The Court found that the insurer has adequate remedies against its insured without penalizing the injured victim:

> Today's decision does not invalidate noncoöperation clauses. Not only is garnishee-defendant not liable to defendant under the contract, but it still has the right to sue defendant for breach of contract. This right provides the necessary incentive for the insured to comply with the insurance contract. Yet, our decision does so without jeopardizing the victim's right to recovery. Where insurance coverage is mandatory, the risk of nonrecovery should be placed on the insurance company and not on the victim. [*Coburn v Fox*, 134 Mich App 190, 196; 350 NW2d 852 (1984).]

#### THE MICHIGAN RULE AND THE NO-FAULT LAW

The "Michigan Rule" was enunciated in *Allen v Cheatum, supra,* decided in 1958. In *Allen,* as in the present case, defendant-insurer raised the defense of noncoöperation of its insured to a garnishment action. This Court found that the insurer has the burden of showing more than noncoöperation; it must also show actual prejudice:

> On the main issue, whatever the law may be elsewhere, in Michigan we seem committed to the rule that in order for an insurance company to successfully claim noncoöperation of its assured as

a defense in these situations, it not only has the burden of showing such lack of coöperation but also that it was prejudicial. [*Allen,* 351 Mich 595.]

The Michigan no-fault insurance act became law on October 1, 1973, fifteen years after *Allen v Cheatum,* and the act's constitutionality was upheld in *Shavers v Attorney General,* 402 Mich 554, 578; 267 NW2d 72 (1978). In *Belcher v Aetna Casualty,* 409 Mich 231, 240; 293 NW2d 594 (1980), this Court discussed the effect of the no-fault law on the common-law tort system. In most cases, injured motorists seek compensation from their own insurers and thus avoid the delay involved in litigation.

The right to pursue a tort claim is preserved under the act where an injured person has suffered death, serious impairment of a bodily function, or permanent serious disfigurement caused by another's ownership, maintenance, or use of a motor vehicle. MCL 500.3135; MSA 24.13135. Plaintiffs' cause of action arose after the enactment of the no-fault law and is controlled by it. There is no defense of noncoöperation provided for within the no-fault act itself.

Before the enactment in 1973 of the no-fault insurance act, motorists could choose whether or not to carry liability insurance. If they purchased insurance at all, MCL 500.3009; MSA 24.13009 required that the policy include minimum liability coverage for bodily injury, death, and property damage. This insurance coverage, mandatory if a policy was purchased, was not compulsory—drivers could, under the Motor Vehicle Accident Claims Act, MCL 257.1101 *et seq.;* MSA 9.2801 *et seq.* (MVACA), choose to be uninsured. Under the MVACA, the driver could pay a set fee and obtain registration for the vehicle. In the event of an

accident, injured persons obtained recovery from the Motor Vehicle Accident Claims Fund, administered by the Secretary of State, who in turn recovered from the uninsured motorist.

Under Michigan's no-fault act, both personal injury protection (PIP) *and* residual liability insurance is now required. Insurance coverage to protect oneself from the costs of injury through PIP benefits and to protect injured third parties through residual liability insurance is compulsory. Persons violating the no-fault requirements are subject to a criminal penalty. MCL 500.3102(2); MSA 24.13102(2).

The decision by the Legislature to make residual liability coverage compulsory under the no-fault act is critical. Before 1973, motorists purchased insurance to protect themselves. Under the no-fault act, the Legislature requires PIP and liability insurance to protect the members of the public at large from the ravages of automobile accidents. While a noncoöperation clause may be valid where the insurance was optional, the general rule where an injured third person seeks recovery under a compulsory liability policy is that the failure of the insured to coöperate with the insurer is not a valid defense:

> In cases involving required insurance, the insurer may not assert noncoöperation as a defense to an action or garnishment proceedings brought by an injured member of the public within the class sought to be protected by the applicable financial responsibility statute. [2 Long, Liability Insurance, § 14.19, p 14-52.]
> [M]ost of the cases . . . recognize that failure to give notice of an accident, or other lack of coöperation on the part of the insured, does not constitute a defense to an action by an injured member of the public to recover from the insurer, where the

policy or bond was procured in compliance with a general compulsory liability or financial responsibility insurance statute, such statutes being for the benefit of members of the public, and not of the insured. [Anno: *Failure to give notice, or other lack of coöperation by insured, as defense to action against compulsory liability insurer by injured member of the public,* 31 ALR2d 645, 647.]

Plaintiffs contend that the Michigan rule has been abrogated in automobile cases by the enactment of this compulsory scheme of motor vehicle insurance. Thus, Progressive, as Fox's no-fault insurer, must pay the judgment against Fox regardless of whether there is a dispute between the insurer and the insured as to the coöperation of the insured under the insurance contract. We agree.[3]

---

[3] In *Frankenmuth Mutual Ins Co v Latham,* 103 Mich App 66; 302 NW2d 329 (1981), the insurer sought to have a policy of insurance declared void because the insured had made a misrepresentation as to the validity of his driver's license at the time he obtained the insurance. The insured had been involved in an accident where a third party had been injured and had brought a claim against the insurer for damages. The Court of Appeals stated:

"The liability of the insurer with respect to insurance required by the act becomes absolute whenever injury or damage covered by such policy occurs. . . . [N]o violation of policy provisions may be used to defeat or avoid the policy." [*Frankenmuth, supra,* p 68.]

In *State Farm Mutual Automobile Ins Co v Kurylowicz,* 67 Mich App 568; 242 NW2d 530 (1976), the insured had misrepresented to the insurer facts regarding his operator's license. After the policy was issued, the insured was involved in an accident in which a third party was killed. Upon being notified of the claim, the insurer declared the policy void, backdating its declaration to the date of issue. Decedent's estate brought suit against the insured, and the matter was turned over to the insurer for representation. The insurer requested that the policy be declared void ab initio to avoid defending the matter or payment of the claim. The Court of Appeals, while noting that the matter had occurred prior to the enactment of the compulsory motor vehicle insurance act, affirmed the lower court's decision, citing the legislative intent to provide a means of recovery for losses by accident victims, stating:

Allowing Progressive to successfully assert a defense of noncoöperation six years after plaintiffs had filed suit and almost one year after plaintiffs had secured a default judgment would deny plaintiffs the protection intended by the no-fault act. A

> [T]he policy of the State of Michigan regarding automobile liability insurance and compensation for accident victims emerges crystal clear. It is the policy of this state that persons who suffer loss due to the tragedy of automobile accidents in this state shall have a source and a means of recovery. Given this policy, it is questionable whether a policy of automobile insurance can ever be held void ab initio after injury covered by the policy occurs. [*Kurylowicz, supra,* p 574.]

In *Auto-Owners Ins Co v Ins Comm'r*, 141 Mich App 776; 369 NW2d 896 (1985), the Court of Appeals, in considering whether an insurer may rescind a no-fault policy on the grounds of a material misrepresentation, stated that a policy may be rescinded and declared void ab initio where it was procured through the insurer's intentional misrepresentation of a material fact. However, the Court of Appeals noted that the case did not involve an injury to a third person and that if it had, the policy could not be rescinded to avoid such a claim.

> The public policy considerations present where an innocent third party must bear the risk of an intentional misrepresentation by the insured are not present where, as is here asserted, the person seeking to collect no-fault benefits is the same person who procured the policy of insurance through fraud.[1]

> [1] In noting this difference in *United Security [Ins Co v Ins Comm'r,* 133 Mich App 38; 348 NW2d 34 (1984)], the Court distinguished the cases of *DAIIE v Ayvazian,* 62 Mich App 94, 99-100; 233 NW2d 200 (1975); *Frankenmuth Mutual Ins Co v Latham,* 103 Mich App 66; 302 NW2d 329 (1981), and *State Farm Mutual Automobile Ins Co v Kurylowicz, supra,* wherein this Court disallowed the insurance companies' attempts to use the insureds' misrepresentation to rescind the policy *ab initio* and avoid liability to other claimants. [*Auto-Owners, supra,* p 780.]

The Court of Appeals reached the same result in *Cunningham v Citizens Ins Co,* 133 Mich App 471; 350 NW2d 283 (1984). The insurer was allowed to rescind a policy procured through fraud because there had been no injury to a third party.

> Had innocent third parties been seriously injured in a collision with plaintiff's vehicle, we believe that public policy would compel us to hold that coverage for the accident existed, at least for these third parties. [*Cunningham, supra,* p 477.]

defendant whom plaintiffs had successfully sued under the no-fault act would suddenly become an uninsured motorist when plaintiffs attempted to collect their judgment.

### CONCLUSION

We believe that the Court of Appeals reached the right result for the right reasons. The decedents, Robert and Jeanne Coburn, were in a class intended to be protected by the no-fault statute. Because of the compulsory nature of the liability insurance, the noncoöperation of the insured is not a good defense in an action between a third-party victim and an insurer to the extent of the statutorily required minimum residual liability insurance.

Affirmed.

WILLIAMS, C.J., and LEVIN, BRICKLEY, BOYLE, and RILEY, JJ., concurred with CAVANAGH, J.

ARCHER, J., took no part in the decision of this case.