*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PROGRESSIVE MARATHON INSURANCE
COMPANY,

   Plaintiff-Appellant,

v

JUAN-CARLOS ESPINOZA-SOLIS, also known as
JUAN-CARLOS ESPINOZA, also known as JUAN-
CARLOS SOLIS,

   Defendant,

and

GJOVALIN SHKRELI,

   Defendant-Appellee.

FOR PUBLICATION
June 20, 2024
9:05 a.m.

No. 366764
Oakland Circuit Court
LC No. 22-195860-NF

Before: YATES, P.J., and BORRELLO and GARRETT, JJ.

BORRELLO, J.

In this declaratory judgment action, plaintiff-appellant Progressive Marathon Insurance Company appeals as of right the trial court's order denying its motion for summary disposition and granting summary disposition to defendant-appellee, Gjovalin Shkreli. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Defendant Juan-Carlos Espinoza-Solis was insured by a policy of Michigan no-fault insurance issued by Progressive when Espinoza-Solis was involved in a motor-vehicle accident with Shkreli on June 23, 2021. Shkreli filed a negligence action against Espinoza-Solis, and Progressive retained counsel to defend Espinoza-Solis in that action. The trial court entered a default judgment against Espinoza-Solis in Shkreli's favor for $250,000 as a discovery sanction.

Progressive filed the instant declaratory judgment action, naming Espinoza-Solis and Shkreli as defendants. In its complaint, Progressive initially sought a ruling declaring that it had no duty to defend and indemnify Espinoza-Solis pursuant to a provision in the insurance policy that Progressive argued required Espinoza-Solis to cooperate with Progressive regarding a claim or lawsuit involving the policy. Progressive alleged that Espinoza-Solis had "utterly failed to cooperate with Progressive" in the separate negligence action filed by Shkreli against Espinoza-Solis because Espinoza-Solis had ignored the repeated requests of counsel, which Progressive had retained to defend Espinoza-Solis, asking him to contact counsel. Counsel for Espinoza-Solis was granted leave to withdraw from that negligence action based on a breakdown of the attorney-client relationship, after which Shkreli's motion for entry of a default judgment was granted.

Subsequently, in the present declaratory judgment action, Progressive conceded that it was "statutorily required to provide minimum liability coverage for bodily injury regardless of whether its insured violates a noncooperation provision in its insurance policy pursuant to the Michigan Supreme Court's decision in *Coburn v Fox*, 425 Mich 300; 389 NW2d 424 (1986)." However, Progressive moved for summary disposition under MCR 2.116(C)(10) and argued that the statutory minimum coverage for which it was liable to Shkreli was $20,000 under *Coburn* and MCL 257.520(b)(2). In the alternative, Progressive argued that the statutory minimum coverage for which it was liable was $50,000 under MCL 500.3009(5). Progressive contended that because of these two statutory provisions, the statutory minimum coverage for which it was liable could not be $250,000 under MCL 500.3009(1).

Shkreli argued in response that MCL 500.3009(1) plainly imposes a minimum coverage amount of $250,000. Shkreli further argued that MCL 500.3009(5) did not apply because coverage for a lower amount is available only when an insured affirmatively chooses such coverage using a prescribed form and Espinoza-Solis's policy declaration page indicated that he did not exercise that option and instead carried coverage for bodily injury liability to others with a limit of $250,000 per person. Additionally, Shkreli argued that to the extent MCL 257.520 conflicted with provisions of the no-fault act, MCL 257.520 was superseded by MCL 500.3009 because the no-fault act was the more recently enacted legislative expression of Michigan's public policy regarding automobile insurance. Alternatively, Shkreli maintained that because he was an innocent third party, the trial court was required to balance the equities before it could grant Progressive's requested relief on the basis of Espinoza-Solis's failure to comply with the provision in his policy requiring him to cooperate with Progressive regarding the underlying negligence case.

Pursuant to MCR 2.119(E)(3), the trial court considered Progressive's motion for summary disposition without oral argument. The trial court denied Progressive's motion and instead granted summary disposition in favor of Shkreli under MCR 2.116(I)(2). The court explained the basis for its ruling as follows:

> There has been no documentary evidence provided to show that Juan-Carlos Espinoza-Solis exercised an option to select a lower limit. His policy with Plaintiff reflects coverage at $250,000 for each person. Therefore, MCL 500.3009(5) cannot be utilized. Because the accident occurred on June 23, 2021, which was after the effective date of MCL 500.3009(1)(a), the Court concludes that the Plaintiff is obligated to indemnify Juan-Carlos Espinoza-Solis in the amount of $250,000.00 for the reasons argued by Defendant Shkreli.

-2-

This appeal followed.

## II.  STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Corley v Detroit Bd of Ed*, 470 Mich 274, 277; 681 NW2d 342 (2004).  Issues of statutory interpretation present questions of law that are reviewed de novo. *McCormick v Carrier*, 487 Mich 180, 188; 795 NW2d 517 (2010).  Summary disposition is warranted under MCR 2.116(C)(10) if "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."  MCR 2.116(C)(10).  "In evaluating such a motion, a court considers the entire record in the light most favorable to the party opposing the motion, including affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties." *Corley*, 470 Mich at 278.  "If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party."  MCR 2.116(I)(2).

## III.  ANALYSIS

Here, we must determine the effect of Michigan's recent no-fault insurance reform on the extent of a no-fault insurer's financial liability on behalf of its insured to an injured third party for personal injury when the insured fails to cooperate with the insurer in the underlying negligence litigation between the insured and the injured third party.

Michigan's recent no-fault insurance reform introduced in 2019 and implemented after July 1, 2020, can impact a no-fault insurer's financial liability in a couple of ways when the insured fails to cooperate with the insurer in a negligence lawsuit with a third party.  Succinctly stated, we conclude that Michigan's no-fault reform can financially penalize the insured for non-cooperation with Personal Injury Protection (PIP) benefits, but the insurer's obligation to defend the lawsuit and pay bodily injury liability damages remains intact.

Prior to the recent changes in Michigan's no-fault law, the answer to the question posed was well-settled.  In *Coburn*, 425 Mich at 312, our Supreme Court held that "[b]ecause of the compulsory nature of the liability insurance, the noncooperation of the insured is not a good defense in an action between a third-party victim and an insurer to the extent of the statutorily required minimum residual liability insurance."  In that case, the victims were killed in a motor-vehicle accident involving a vehicle driven by the defendant insured. *Id*. at 302.

A negligence action was brought against the defendant, and the defendant's insurance company retained counsel to represent the defendant as required by his insurance policy. *Id*. at 302-303.  The insurance policy contained a provision that required the defendant to cooperate with the insurer regarding the lawsuit. *Id*. at 303.  However, the defendant failed to appear for his deposition on two separately scheduled dates, ignored multiple attempts by his counsel to establish contact, and otherwise failed to participate in the litigation. *Id*. at 303-305.  The victims' estates were granted summary disposition in their favor on the issue of liability against the defendant. *Id*. at 305.  Following a bench trial on the issues of damages, conducted in the defendant's absence despite attempts to procure his attendance, the trial court awarded damages of $20,000 to each of the two victims' respective estates, plus costs, mediation sanctions, and interest. *Id*.  At the time, the "minimum residual liability coverage mandated by the no-fault act [was] $20,000 for injury to

one person in one accident or $40,000 for injury to two or more persons in one accident." *Id.* at 305 n 2. The defendant's "no-fault policy was limited to this minimum coverage," and the "trial court awarded plaintiffs $40,000 plus costs, mediation sanctions, and interest." *Id.*

Our Supreme Court was presented with the issue "whether the enactment of the Michigan no-fault insurance act invalidates any provision in a no-fault contract relieving the insurer of liability should the insured fail to cooperate in defending a claim by an injured third party." *Id.* at 302 (citation omitted). The Court stated that the case was controlled by the no-fault act because the cause of action "arose after the enactment of the no-fault law," and the Court observed that there "is no defense of noncooperation provided for within the no-fault act itself." *Id.* at 308.

Our Supreme Court concluded that the defendant insured's no-fault insurer "*must pay the judgment* against [the defendant] regardless of whether there is a dispute between the insurer and the insured as to the cooperation of the insured under the insurance contract." *Id.* at 310 (emphasis added). The Court explained its reasoning as follows:

> Under Michigan's no-fault act, both personal injury protection (PIP) *and* residual liability insurance is now required. Insurance coverage to protect oneself from the costs of injury through PIP benefits and to protect injured third parties through residual liability insurance is compulsory. Persons violating the no-fault requirements are subject to a criminal penalty. MCL 500.3102(2).

> The decision by the Legislature to make residual liability coverage compulsory under the no-fault act is critical. Before 1973, motorists purchased insurance to protect themselves. Under the no-fault act, the Legislature requires PIP and liability insurance to protect the members of the public at large from the ravages of automobile accidents. While a noncooperation clause may be valid where the insurance was optional, the general rule where an injured third person seeks recovery under a compulsory liability policy is that the failure of the insured to cooperate with the insurer is not a valid defense:

>> In cases involving required insurance, the insurer may not assert noncooperation as a defense to an action or garnishment proceedings brought by an injured member of the public within the class sought to be protected by the applicable financial responsibility statute.

>> [M]ost of the cases . . . recognize that failure to give notice of an accident, or other lack of cooperation on the part of the insured, does not constitute a defense to an action by an injured member of the public to recover from the insurer, where the policy or bond was procured in compliance with a general compulsory liability or financial responsibility insurance statute, such statutes being for the benefit of members of the public, and not of the insured. [*Id.* at 309-310 (citations omitted; alteration and ellipsis in original).]

Thus, in *Coburn*, the insurer could not avoid liability to the injured third party merely because the insured had failed to cooperate with the insurer in the underlying negligence litigation between the insured and the injured third party. *Id*.

In June 2019, the Michigan Legislature amended multiple statutes as part of its no-fault reform efforts. See 2019 PA 21; 2019 PA 22; *Progressive Marathon Ins Co v Pena*, 345 Mich App 270, 276; ___ NW3d ___ (2023). As relevant to the issue presented in this case, MCL 500.3009 was amended as part of these legislative no-fault reform efforts and now provides in pertinent part as follows:

> (1) Subject to subsections (5) to (8), an automobile liability or motor vehicle liability policy that insures against loss resulting from liability imposed by law for property damage, bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle must not be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless the liability coverage is subject to all of the following limits:

> (a) Before July 2, 2020, a limit, exclusive of interest and costs, of not less than $20,000.00 because of bodily injury to or death of 1 person in any 1 accident, and after July 1, 2020, a limit, exclusive of interest and costs, of not less than $250,000.00 because of bodily injury to or death of 1 person in any 1 accident.

> (b) Before July 2, 2020 and subject to the limit for 1 person in subdivision (a), a limit of not less than $40,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident, and after July 1, 2020, and subject to the limit for 1 person in subdivision (a), a limit of not less than $500,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident.

> * * *

> (5) After July 1, 2020, an applicant for or named insured in the automobile liability or motor vehicle liability policy described in subsection (1) may choose to purchase lower limits than required under subsection (1)(a) and (b), but not lower than $50,000.00 under subsection (1)(a) and $100,000.00 under subsection (1)(b). To exercise an option under this subsection, the person shall complete a form issued by the director and provided as required by section 3107e, that meets the requirements of subsection (7).

> (6) After July 1, 2020, on application for the issuance of a new policy or renewal of an existing policy, an insurer shall do all of the following:

> (a) Provide the applicant or named insured the liability options available under this section.

> (b) Provide the applicant or named insured a price for each option available under this section.

(c) Offer the applicant or named insured the option and form under this subsection.

(7) The form required under subsection (5) must do all of the following:

(a) State, in a conspicuous manner, the risks of choosing liability limits lower than those required by subsection (1)(a) and (b).

(b) Provide a way for the person to mark the form to acknowledge that he or she has received a list of the liability options available under this section and the price for each option.

(c) Provide a way for the person to mark the form to acknowledge that he or she has read the form and understands the risks of choosing the lower liability limits.

(d) Allow the person to sign the form.

(8) After July 1, 2020, if an insurance policy is issued or renewed as described in subsection (1) and the person named in the policy has not made an effective choice under subsection (5), the limits under subsection (1)(a) and (b) apply to the policy.

*Coburn* has not been overruled, and its holding that an insurer cannot assert its insured's noncooperation as a defense to liability to an injured third party "to the extent of the statutorily required minimum residual liability insurance," *Coburn*, 425 Mich at 312, is still controlling in the present case, which involves a factual scenario virtually identical to that in *Coburn*. The question before us is simply the *extent* of the insurer's liability in light of the amendments to MCL 500.3009 involving the minimum residual liability insurance limits[1] that automobile no-fault insurance policies must include. Both the underlying accident and the issuance of Espinoza-Solis's no-fault insurance policy occurred after the amendments to MCL 500.3009 took effect. The amended version of MCL 500.3009 therefore clearly applies in this case.

Resolution of the question before us presents an issue of statutory interpretation. Our task in interpreting a statute is to "ascertain and give effect to the Legislature's intent" as evidenced from the statute's plain language. *Rouch World, LLC v Dep't of Civil Rights*, 510 Mich 398, 410; 987 NW2d 501 (2022) (quotation marks and citation omitted). "If the statutory language is clear

---

[1] Pursuant to § 3101 of the no-fault act, MCL 500.3101 *et seq.*, "the owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance and property protection insurance as required under this chapter, *and residual liability insurance*." MCL 500.3101(1) (emphasis added). Under § 3131 of the no-fault act, residual liability insurance covers "bodily injury and property damage." MCL 500.3131(1). "In this state this insurance shall afford coverage for automobile liability retained by section 3135." MCL 500.3131(1). Section 3131 does "not require coverage in this state other than that required by section 3009(1)." MCL 500.3131(2).

and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written." *Yopek v Brighton Airport Ass'n, Inc*, 343 Mich App 415, 424; 997 NW2d 481 (2022) (quotation marks and citation omitted). We read the statutory provisions "in the context of the entire statute to produce a harmonious whole," and we "apply a reasonable construction that best accomplishes the statute's purpose" in light of the "object of the statute and the harm it is designed to remedy." *Id*. (quotation marks and citation omitted).

Before MCL 500.3009 was amended as part of the recent no-fault reforms, the statute only required minimum coverage limits for bodily injury or death of $20,000 per person and $40,000 per accident. See MCL 500.3009(1), as amended by 2016 PA 346. In that version of the statute, there was no provision authorizing a choice of lower coverage limits analogous to Subsection (5) of the current version of MCL 500.3009. See MCL 500.3009(1), as amended by 2016 PA 346. The current version of MCL 500.3009, however, requires minimum coverage limits for bodily injury or death of $250,000 per person and $500,000 per accident in policies issued after July 1, 2020. Additionally, under the current version of MCL 500.3009(5), insureds "may choose to purchase lower limits than required under subsection (1)(a) and (b), but not lower than $50,000.00 [per person] under subsection (1)(a) and $100,000.00 [per accident] under subsection (1)(b)" for policies issued after July 1, 2020. There are certain statutory requirements that must be met to "exercise an option" under Subsection (5). MCL 500.3009(5). Pursuant to MCL 500.3009(8), if "the person named in the policy has not made an effective choice under subsection (5), the limits under subsection (1)(a) and (b) apply to the policy."

For purposes of defining Progressive's liability pursuant to *Coburn*, the parties disagree over whether $250,000 or $50,000 is the statutorily required per person minimum coverage limit under MCL 500.3009. Progressive argues that because the statute permits insureds to choose a per person coverage limit as low as $50,000, that amount reflects the statutorily required minimum limit.

However, in *State Farm Mut Auto Ins Co v Estate of Fortin*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363755); slip op at 8, this Court interpreted the current version of MCL 500.3009 and concluded that the statute "require[s]" policies issued after July 1, 2020 "to provide bodily injury liability limits of at least $250,000 per person and $500,000 per accident, unless the insured chose a lower limit." This Court explained that "[u]nder MCL 500.3009(8), if an insured 'has not made an effective choice' of reduced coverage, the *default limits of $250,000 per person and $500,000 per accident apply*" and that these default limits were thus "required by law." *State Farm*, ___ Mich App at ___; slip op at 8 (emphasis added). "The plain language of MCL 500.3009(1) and (8) requires the choice of coverage be made when or before the policy is issued." *Id*. at ___; slip op at 13.

Our holding in *State Farm* is consistent with the principles of statutory construction provided by our Supreme Court. In *Kemp v Farm Bureau General Insurance Company of Michigan*, 500 Mich 245, 252; 901 NW2d 534 (2017), our Supreme Court instructed: "[w]hen interpreting statutes, our goal is to give effect to the Legislature's intent, focusing first on the statute's plain language. 'In so doing, we examine the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme. When a statute's language is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written.'" (internal citations omitted).

Applying these basic principles of statutory construction, we conclude that the language of MCL 500.3009 is clear that the $250,000 per person and $500,000 per accident limits in Subsection (1) apply by default and are mandatory for all no-fault policies issued after July 1, 2020. MCL 500.3009(1), (5), and (8); *State Farm*, ___ Mich App at ___, ___; slip op at 8, 13. We further conclude that Subsection (5) of the statute provides an "option" to obtain an exception to the mandatory minimums of Subsection (1) if certain conditions are met. Because the minimums in Subsection (5) do not apply automatically to every policy issued after July 1, 2020, and are not *required*, while the minimums in Subsection (1) *do* apply automatically by default to every policy issued after July 1, 2020, and *are* required unless certain requirements are met to obtain an exception to these mandatory minimums, we conclude that *Coburn* commands the statutorily required minimum residual liability insurance under the current version of MCL 500.3009 for policies issued after July 1, 2020 is $250,000 per person and $500,000 per accident as stated in MCL 500.3009(1). We further note that there is an exception to this requirement, viz., if it is established that an effective election of a lower limit was made pursuant to Subsection (5), in which case the selected policy limit becomes the required minimum residual liability insurance.

Progressive also notes that MCL 257.520(b)(2) only requires an owner or operator's motor vehicle liability insurance policy to

> insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each such motor vehicle, as follows: $20,000.00 because of bodily injury to or death of 1 person in any 1 accident and, subject to said limit for 1 person, $40,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident . . . .

Thus, Progressive contends that the $20,000 per person and $40,000 per accident minimum limits provided by MCL 257.520(b)(2) actually constitute the statutorily required *minimum* residual liability insurance for purposes of its liability under *Coburn*. Progressive maintains that there is no indication that MCL 257.520(b)(2) has been superseded by MCL 500.3009 and that these two statutes may be harmonized because MCL 500.3009 "deals with the minimum coverages that can be afforded as a matter of contract law, between the insurer and the insured, whereas § 520(b)(2) deals with what must be afforded in order to protect the general public."

MCL 257.520 is contained within the financial responsibility act, MCL 257.501 *et seq*. Our Supreme Court has specifically explained that the

> no-fault act, as opposed to the financial responsibility act, is the most recent expression of this state's public policy concerning motor vehicle liability insurance. Therefore, while [an] insurance policy might well be reconciled with the financial responsibility act, its failure to comply with the no-fault act nevertheless renders it violative of public policy. An insurance policy that is repugnant to the clear directive of the no-fault act otherwise cannot be justified by the financial

responsibility act. [*Citizens Ins Co of America v Federated Mut Ins Co*, 448 Mich 225, 232; 531 NW2d 138 (1995).]

Our Supreme Court has concluded that MCL 500.3009 has been expressly incorporated into the no-fault act to define the amount of residual liability insurance coverage required under the no-fault act. MCL 500.3131(2); *Citizens*, 448 Mich at 229 n 3. "In this state, the amount of residual liability coverage required by the applicable no-fault law is determined by reference to § 3009(1)." *Citizens*, 448 Mich at 234, citing MCL 500.3131(2). Accordingly, this issue is controlled by MCL 500.3009, not MCL 257.520(b)(2). Moreover, we note that Progressive's argument ignores the fact that compulsory insurance coverage under the no-fault act—and specifically, compulsory residual liability insurance under the no-fault act—exists for the protection of injured third parties and the public at large. *Coburn*, 425 Mich at 309.

Finally, contrary to the concerns expressed by Progressive, our decision does not leave Progressive without a remedy because it may still sue Espinoza-Solis for breach of contract and enforce its noncooperation clause against him as its insured. *Coburn*, 425 Mich at 307, 312. Consequently, an insured has an incentive to comply with a contractual provision requiring cooperation with the insurer. *Id*.

## IV. CONCLUSIONS

We hold that the statutorily required minimum residual liability insurance for policies issued after July 1, 2020, is $250,000 per person and $500,000 per accident, pursuant to MCL 500.3009(1)(a) and (b), unless the proper steps are followed to exercise the option of selecting a lower coverage amount under MCL 500.3009(5). We further hold that under *Coburn*, an insurer may not assert the noncooperation of its insured as a defense to a claim by a third-party victim to thwart the minimums set forth in MCL 500.3009(1) unless the insured properly exercised the option to select lower coverage, in which case the insurer is only liable to the extent of the insured's selected lower coverage amount. Additionally, we conclude that an insurer is not prohibited from pursuing any available remedies against its insured based on the insured's noncooperation.

Here, the record reflects that Espinoza-Solis's policy limits were $250,000 per person and $500,000 per accident in accordance with the mandatory limits set forth in MCL 500.3009(1). Progressive does not claim that Espinoza-Solis exercised the option under MCL 500.3009(5) to select a lower limit, and we see nothing in the record that would support such a contention. As previously mentioned, MCL 500.3009(8) states that if an insured does not choose the lower limits, the mandatory minimums apply. Espinoza-Solis's coverage meets the mandatory minimum and in the absence of any evidence that he opted for lower limits under MCL 500.3009(5), the trial court was correct in concluding that Progressive is liable for the entire $250,000 judgment.

Affirmed. Defendant-Appellee, having prevailed in full, is entitled to tax costs. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ Christopher P. Yates
/s/ Kristina Robinson Garrett

-9-