**TRAVELERS INSURANCE COMPANIES, Appellant–Garnishee Defendant,**

v.

**Rosa E. ROGERS and Robert D. Rogers, Appellee–Plaintiffs,**

**Michigan Industrial Mechanical and Gary P. Sumner, Nominal Appellees–Judgment Defendants.**

No. 49A02–9010–CV–616.

Court of Appeals of Indiana, Second District.

Oct. 21, 1991.

James E. Rocap, Jr., Rocap, Witchger & Threlkeld, Indianapolis, for appellant-garnishee defendants.

Irwin B. Levin, Steven J. Halbert, Caroline Gilchrist, Cohen & Malad, P.C., Indianapolis, for appellees-plaintiffs.

SULLIVAN, Judge.

Travelers Insurance Company (Travelers) appeals from a trial court order in garnishment proceedings which orders Travelers, as the insurer of Michigan Industrial Mechanical (MIM) and Gary Sumner [1] (Sumner), to pay to Rosa Rogers and Robert Rogers (the Rogers) the sum of $143,579.87.

We reverse and remand.

Travelers presents two issues for our review, which we restate as follows:

I. Whether Indiana law or Michigan law applies upon the question whether Travelers must pay the judgment against MIM and Sumner, pursuant to the insurance policy it issued to MIM and Sumner; and

II. Whether, under the appropriate state law, an insurer may assert lack of notice as a defense against a third party plaintiff who is seeking to collect, from the insurer, a judgment against its insured?

The facts most favorable to the trial court's order are as follows. On June 1, 1986, the Rogers were injured in a traffic accident with Sumner, who was operating a vehicle owned by MIM. At the time of the accident, MIM and Sumner were insured by Travelers. The Rogers filed a complaint against MIM and Sumner on August 4, 1986, seeking damages. On November 8, 1986, the Rogers received a default judgment against MIM and Sumner with regard to the issue of liability. On December 8, 1986, Travelers was notified for the first time of the occurrence.[2] Having not previ-

---

1. Apparently, Sumner was an officer of MIM at the time of the occurrence. No issue is presented upon appeal concerning the trial court's jurisdiction over MIM in this matter; therefore, we do not address it.

2. Sumner had previously told the Rogers that he had notified Travelers of both the accident and the resultant litigation. Apparently, he had not

informed Travelers of either. The December 8 letter from the Rogers to Travelers read as follows:

"Please be advised that the undersigned has been informed by Gary P. Sumner that he has notified you of a claim by my client relative to personal injuries and property damage sustained as a result of Mr. Sumner's negligence on or about June 1, 1986. I would appreciate

ously been aware of the incident, Travelers requested additional contact from the Rogers' counsel. On January 29, 1987, the Rogers' counsel responded by letter:

> "Pursuant to our telephone conversation of January 27, 1986 I am enclosing herewith a copy of the police report in the above referenced matter. As we have made a formal claim in this matter I would appreciate your position. Litigation has been filed and I will be taking those steps which I feel are necessary to protect my client to collect against Travellers (sic) and would rather do this on an amicable basis if at all possible. I shall diary my file fourteen (14) days. If you feel that any further discussion is warranted please do not hesitate to contact me at any time." Record at 317.

However, prior to the January 29 letter, the Rogers petitioned the trial court to remove their action from the call of the docket[3] because they had "learned that no such insurance [i.e. the Travelers policy] exists."[4] Record at 34. The Rogers then attempted, unsuccessfully, to collect uninsured coverage from their own insurer.

On October 17, 1989, in supplemental garnishment proceedings against MIM and Summer, the Rogers served interrogatories upon Travelers asking whether Travelers insured MIM or Sumner during the period from January 1, 1988 to October 19, 1989. On December 5, 1989, Travelers answered, accurately, in the negative. Earlier, on November 3, 1989, after a hearing on damages, the trial court had awarded the Rogers $143,579.87.[5] On December 8, 1989, the Rogers instituted proceedings supplemental naming Travelers as garnishee defendant. Travelers asserted, as a defense,

that MIM and Sumner failed to perform their contractual duty to notify Travelers of the accident and subsequent litigation. As a result of the breach of the notification provision, Travelers claimed, the policy's coverage was not triggered. The court rejected the defense and ordered execution upon Travelers' policy with Sumner and MIM. Travelers appeals that order.

### I. *Choice of Laws*

 Choosing the appropriate state substantive law is a decision to be made by the court of the state in which the action is pending. *Hubbard Manufacturing Company, Inc. v. Greeson* (1987) Ind., 515 N.E.2d 1071, 1073. We note initially that the characterization of the nature of an action bears upon the choice-of-law question. Although the underlying occurrence in this appeal initially gave rise to a tort action, such is not the nature of the instant litigation. Travelers disputes the Rogers' claim that its policy covers the Rogers' judgment against MIM and Sumner. Their claim is based exclusively upon the insurance contract; it is therefore a contract action. *See Snow v. Bayne* (1983) 1st Dist. Ind.App., 449 N.E.2d 296.

Formerly, in contract cases, courts applied the law of the state in which the alleged contract was made or was to be performed. The focus upon performance, in most instances, resulted in application of the law where the breach took place. In this regard, the general tort concept that the law of the state where the "wrong" took place was injected into contract litigation. That rule was modified, however, to allow application of the law of the state having the most significant contacts with

---

your immediate attention since the matter has been in litigation." Record at 315.

**3.** Many courts utilize a periodic "call of the docket" to oversee the procedural progress of litigation and more particularly with regard to implementation of TR 41(E).

**4.** There is nothing in the record which explains or indicates why the Rogers believed, erroneously, that MIM and Sumner did not have a policy with Travelers.

**5.** The Rogers do not challenge an apparent *de minimis* error in the calculation of damages. After the damages hearing, the court found

damages to be: $10.019.15 in medical bills; $5,480.00 in property damage; $29,080.72 in lost wages; and $100,000.00 for pain and suffering. The sum of these figures is $144,579.87. However, the garnishment order required that Travelers pay $143,579.87. We find nothing of record to explain the difference between the two figures and therefore assume that it is the result of an error in calculation. Because the error is *de minimis,* and because the Rogers do not challenge the amount set forth in the garnishment order, we hold the amount in controversy to be $143,579.87.

the subject matter of the litigation, regardless of the place of the breach. *See Hubbard Manufacturing, supra.*

In *Snow, supra,* this court was confronted with the choice-of-law issue upon facts very similar to those before us. The insured was a Michigan resident whose automobile was registered in Michigan. The insurance contract was signed in Michigan. The injured third parties were Connecticut and Indiana residents, respectively, and the accident occurred in Indiana. Applying the "significant contacts" test, our First District concluded that the action against the insurer was governed by Michigan law because we were "construing a Michigan contract of insurance issued pursuant to Michigan law which is a part of the insurance contract." *Id.* at 300.

In the instant case, Sumner was a Michigan resident, MIM was a Michigan corporation, and the insurance contract was entered into in Michigan. Several portions of the insurance contract refer specifically to Michigan law and the policy contains numerous provisions included for the purpose of bringing it into compliance with Michigan insurance law. Indiana's only connection with the instant action is that it is the residence of the Rogers and it is where the accident occurred. In light of the fact that our inquiry focuses upon the insurance contract and not upon the underlying occurrence, we conclude that Michigan law is applicable.

## II. *Lack of Notice as a Defense*

Travelers claims that its insurance policy with MIM and Sumner is void because the insureds failed to perform a condition precedent to liability—i.e., they failed to notify Travelers of the accident and subsequent litigation. The Rogers rely heavily upon *Coburn v. Fox* (1986) 425 Mich. 300, 389 N.W.2d 424, to support their position that lack of notice is not a defense available to Travelers under Michigan law.

In *Coburn,* after notifying the insurer, the insured did not make himself available for deposition and did not communicate with his attorneys. It is important to note that the non-cooperation occurred *after* the insured had duly notified the insurer of the accident and pending litigation. The court held that "the noncooperation of the insured is not a good defense in an action between a third-party victim and an insurer to the extent of the statutorily required minimum residual liability insurance." *Coburn, supra,* 389 N.W.2d at 429. However, *Coburn* is only relevant in the instant case if "noncooperation" and "lack of notice" are equivalent.

The Michigan Supreme Court did not specifically address the viability of lack of notice as a defense in Michigan. The Rogers assert that the following passage indicates that the *Coburn* court considered "lack of notice" and "noncooperation" to be the same for purposes of its holding.

" '[M]ost of the cases ... recognize that failure to give notice of an accident, or other lack of cooperation on the part of the insured, does not constitute a defense to an action by an injured member of the public to recover from the insurer, where the policy or bond was procured in compliance with a general compulsory liability or financial responsibility insurance statute, such statutes being for the benefit of members of the public, and not of the insured.' Anno: *Failure to give notice, or other lack of cooperation by insured, as defense to action against compulsory liability insurer by injured member of the public,* 31 A.L.R.2d 645, 647." (Original emphasis.) *Coburn, supra,* 389 N.W.2d at 428.

We reject the Rogers' interpretation. Although the two concepts of "lack of notice" and "noncooperation" are superficially linked in the quotation, the remainder of the opinion is entirely devoid of any other reference to "lack of notice." The analysis and interpretation of any particular portion of an opinion must be undertaken in the context of the entire opinion. In light of the fact that *Coburn* involves the defense of noncooperation, and not the defense of lack of notice, the A.L.R. quotation is relevant only to the extent that the Michigan court was discussing noncooperation. Thus, *Coburn* does not render "non-cooperation" synonymous with "lack of notice."

The Rogers also direct our attention to two cases which they assert hold that *"no misconduct* by the insured will allow the insurance company to escape liability to innocent third parties." (emphasis in original) Brief of Appellee at 13. In *Frankenmuth Mutual Insurance Co. v. Latham* (1981) 103 Mich.App. 66, 302 N.W.2d 329, the insured made misrepresentations to the insurer at the time he obtained insurance. After the insured was involved in an accident, the insurer learned of the misrepresentations and denied payment of the injured third party's claim. The Michigan Court of Appeals affirmed the trial court's denial of the insurer's request that the policy be declared void *ab initio*. *Frankenmuth Mutual, supra,* 302 N.W.2d at 330.

Similarly, in *State Farm v. Kurylowicz* (1976) 67 Mich.App. 568, 242 N.W.2d 530, an insurer sought a court declaration that an insurance policy was void *ab initio* due to misrepresentations made by the insurer in the application for insurance. The court held that the insurance policy was not void, stating:

> "It is the policy of this state that persons who suffer loss due to the tragedy of automobile accidents in this state shall have a source and a means of recovery. Given this policy, it is questionable whether a policy of automobile liability insurance can ever be held void *ab initio* after injury covered by the policy occurs." *Kurylowicz, supra,* 242 N.W.2d at 533.

The Rogers would have us interpret the above-quoted passage to mean that once an insurance policy has been issued and an accident occurs which is potentially covered by the policy, the insurer may never refuse to pay funds from the policy to third parties. We do not read *Kurylowicz* so expansively.

*Frankenmuth Mutual* and *Kurylowicz* are distinguishable from the instant case. In those cases the insurer sought a declaration that the policies were void *ab initio* based upon misrepresentations made in the applications. The *Frankenmuth Mutual* and *Kurylowicz* courts attached great significance to the insurer's own culpability in allowing the misrepresentation to go undetected.[6] Travelers, on the other hand, is seeking a declaration that the policy does not give rise to liability because, due to lack of notice, Travelers never knew that a lawsuit existed at all. For this reason, noncooperation and lack of notice cannot be regarded as identical; a proscription against voiding policies *ab initio* because of misinformation upon the application does not necessarily negate an insurer's defense of lack of notice.

Travelers asserts that this case is controlled by *Kleit v. Saad* (1985) 153 Mich. App. 52, 395 N.W.2d 8. We agree. In *Kleit,* a personal injury plaintiff obtained a judgment against an insured and subsequently brought a garnishment action against the no-fault insurer. The garnishee defendant denied liability, based upon the insured's failure to comply with his contractual obligation to notify the the insurer of the plaintiff's suit. The trial court found that the garnishee defendant had failed to state a valid defense. The Michigan Court of Appeals reversed, holding that lack of notice was a valid defense. *Kleit, supra,* 395 N.W.2d at 11. The court cited M.C.L. § 257.520(f)(6), which states, in pertinent part:

> "'We conclude that an automobile liability insurer must undertake a reasonable investigation of the insured's insurability within a reasonable period of time from the acceptance of the application and the issuance of a policy.... [T]he insurer cannot then successfully defend upon the ground of its own failure reasonably to investigate the application.' [Barrera v. State Farm Mutual Automobile Insurance Company]* 71 Cal.2d [659] at 663, 79 Cal.Rptr. [106] at 109, 456 P.2d [674] at 677 [ (1969) ]." (Emphasis added) *Kurylowicz, supra,* 242 N.W.2d at 534.

**6.** In *Frankenmuth Mutual* the insured falsely represented that he was not under any driver's license suspension or revocation of driving privileges in any state. The court noted that "Frankenmuth did not check [the insured's] driving record in Ohio or Michigan." *Frankenmuth Mutual, supra,* 302 N.W.2d at 330.

The *Kurylowicz* court undertook a detailed analysis focusing upon the common reason underlying other states' policy against declaring insurance policies void *ab initio* based on misinformation given on the application:

"Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:

\* \* \* \* \* \*

The insurance carrier shall not be liable on any judgment if it has not had prompt notice of and reasonable opportunity to appear in and defend the action in which such judgment was rendered, or if the judgment has been obtained through collusion between the judgment creditor and the insured." *Kleit, supra,* 395 N.W.2d at 10–11.

The Rogers contend that *Kleit* was implicitly overruled by *Coburn, supra,* which abolished the defense of noncooperation. As earlier noted, *Coburn* only addressed noncooperation. We see nothing in *Coburn* which erodes the foundation upon which the defense of lack of notice is built. Moreover, the defense of lack of notice is authorized by statute in Michigan. As the *Kleit* court stated:

"We believe that the Legislature did not intend that a plaintiff be allowed to recover from a defendant's insurer if the insurer was never notified of the suit. The legislative policy of securing a recovery under the no-fault act for an injured party, relied on heavily in [a prior Court of Appeals] decision, does not extend to the within case. In this lack of notice situation, in contrast to a defendant's failing to cooperate with his insurer, the plaintiff has some opportunity to discover the existence and identity of the principal defendant's insurance carrier and to notify it that a suit is pending. Realizing that in order to present any defense at all the insurance company must have notice of the suit, the Legislature has provided in the statute that failure to notify the insurer will bar recovery by the plaintiff from the insurer." *Kleit, supra,* 395 N.W.2d at 11.

We therefore hold that the defense of lack of notice of suit is available to an insurer under Michigan law. To hold otherwise would amount to a declaration that M.C.L. § 257.520(f)(6), a statute still in full force and effect, is an incorrect statement of Michigan law.

As the *Kleit* court noted, however, the insurer still has the burden of proving that it was prejudiced by the failure to notify. *Kleit, supra,* 395 N.W.2d at 11. Whether there was prejudice is a factual determination to be made by the trial court. *Id.*

We reverse and remand to the trial court with instructions to make a factual determination with reference to the existence or nonexistence of prejudice.

BAKER and CONOVER, JJ., concur.