**ILLINOIS FARMERS INSURANCE,**
Appellant–Plaintiff,

v.

Tyrone TYSON and Joan Brown,
Appellees–Defendants.

No. 10A04–9310–CV–401.

Court of Appeals of Indiana,
Fourth District.

June 7, 1994.

Transfer Dismissed July 29, 1994.

Mark D. Gerth, Kightlinger & Gray, Indianapolis, for appellant.

Kenneth R. Abbott, Guilfoyle, Thomas & Abbott, Jeffersonville, Matthew B. Troutman, Prospect, KY, for appellees.

RILEY, Judge.

Plaintiff–Appellant Illinois Farmers Insurance Company (Farmers) appeals the trial court's entry of summary judgment in an action for a declaratory judgment against Defendants–Appellees Tyrone Tyson and Joan Brown.

We affirm.

## ISSUE

Did the trial court err in applying Kentucky law in deciding whether an insurer should be allowed to offset the policy limits of a tortfeasor against the limits of liability available to an insured under the underinsured motorists coverage with the insurer?

## FACTS

The undisputed facts in this case are that on December 13, 1991, Brown was driving a car owned by Tyson and insured by Farmers. At a stop light in Louisville, Kentucky, she was rear ended by a car driven by Norman A. Moxley. She sustained bodily injuries and incurred medical expenses in excess of Moxley's $25,000 policy limit.

Because Moxley's automobile liability insurance was limited to $25,000, Brown submitted an underinsured motorist claim to Farmers. Farmers' Automobile Insurance Policy No. 36–12564–21–89 (Policy) under which Tyson is insured included underinsured motorist coverage with limits of $50,000 per person and $100,000 per occurrence. However, when Brown made a formal demand upon Farmers for payment of underinsured motorist benefits, Farmers advised Brown that it was entitled to reduce the $50,000 liability limit by $25,000, the limit of Moxley's liability insurance.

Farmers based its position on the following provisions contained in Tyson's Policy:

**PART 2—UNINSURED MOTORIST**

**Coverage C—Uninsured Motorist Coverage (Including Underinsured Motorist Coverage)**

We will pay all sums which an **insured person** is legally entitled to recover as **damages** from the owner or operator of an **uninsured motor vehicle** because of **bodily injury** sustained by the **insured person.**

\*　　\*　　\*　　\*　　\*　　\*

**Additional Definitions Used In This Part**

\*　　\*　　\*　　\*　　\*　　\*

3. **Uninsured motor vehicle** means a **motor vehicle** which is:

\*　　\*　　\*　　\*　　\*　　\*

b. Insured by a **bodily injury** liability bond or policy at the time of the **accident** which provides coverage in amounts less than the limits of uninsured motorist coverage shown in the declaration Underinsured Motorist Coverage and Declarations.[1]

\* \* \* \* \* \*

**Limits of Liability**

The limits of liability shown in the Declarations apply subject to the following:

1. The limit for "each person" is the maximum for **bodily injury** sustained by any person in any one **occurrence.**

\* \* \* \* \* \*

**Other Insurance**

\* \* \* \* \* \*

2. The amount of Uninsured Motorist Coverage we will pay under Additional Definitions 3b shall be reduced by the amount of any other **bodily injury** coverage available to any party held to be liable for the **accident.**

Appellant's Brief at 4–5; (R. 17–19) (emphasis in original).

Brown disputed Farmers' position, contending that Kentucky law should control as to the extent of Farmers' liability under its underinsured motorist coverage. Under Kentucky law, Farmers is not entitled to reduce the amounts payable under its underinsured motorist coverage by the amount of Moxley's liability insurance. Brown based her position on § 3 of the limits of liability provision in Tyson's policy, which reads:

**Limits of Liability**

The limits of liability shown in the Declaration apply subject to the following:

3. Subject to the law of the **state** of the **occurrence,** we will pay no more than these maximums regardless of the number of vehicles insured, **insured persons,** claims, claimants, policies or vehicles involved in the **occurrence.**

(R. 18) (emphasis in original).

Because of this dispute, Farmers filed a complaint for declaratory judgment on February 16, 1993. On April 12, 1993, Tyson and Brown filed a motion for summary judgment; a month later, Farmer's cross-motioned for summary judgment. On July 7, 1993, the trial court entered its summary judgment order, which provided in part:

[Farmers] has no legal right to set-off the policy limits of the tortfeasor against the limit of liability available to Joan Brown pursuant to its underinsured motorist coverage because of an ambiguity in the contract which leads this court to apply Kentucky law to the set-off issue.

(R. 74).[2]

Farmers appeals.

### *DISCUSSION* [3]

 Summary Judgment is an appropriate disposition when the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind.Trial Rule 56(C). When we review the grant of summary judgment, we conduct the same inquiry as the trial court; however, the party that lost in the trial court has the burden to persuade the

---

1. The definition of "uninsured motor vehicle" is not found, as asserted in Farmers' Brief under "Additional Definitions Used in This Part" in Exhibit A which purports to be "a true and correct copy of the declarations that were issued to Tyrone Tyson." Appellant's Brief at 4–5; (R. 7–25). The definition of an "uninsured motor vehicle" is found on an unnumbered and out of sequence page which follows the "Limits of Liability" and "Other Insurance" sections in Part II of the policy. *See* (R. 18, 19). Although Tyson and Brown do not raise this discrepancy, and we do not base our decision on this technicality, we note that section 2 of "Other Insurance," upon which Farmers bases its argument, refers to the "Additional Definitions 3b" when there is no

"3b" under the "Additional Definitions" according to Farmers' Exhibit A.

2. A second issue in the summary judgment motion involving the stacking of insurance was resolved by the trial court in favor of Farmer's and is not the subject of this appeal.

3. Farmers also argues that Indiana law should have controlled in this case based on a "significant contacts" analysis. In addition, Farmers argues that it did not waive its right to litigate the choice of law issue. Because we affirm the trial court's decision on other grounds, we decline to resolve Farmers' additional issues.

appellate tribunal that the trial court erred. *Campbell v. Criterion Group* (1993), Ind. App., 613 N.E.2d 423, 428, *on reh'g* (1993), Ind.App., 621 N.E.2d 342. Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the material designated to the trial court. *Fawley v. Martin's Supermarket* (1993), Ind. App., 618 N.E.2d 10, 12, *trans. denied.*

 The provisions of an insurance contract are subject to the same rules of construction as other contracts, and construction of a written contract is a question of law for which summary judgment is particularly appropriate. *Selleck v. Westfield Ins.* (1993), Ind.App., 617 N.E.2d 968, 970, *trans. denied.* The rules of contract interpretation generally apply to insurance contracts. *Allstate v. United Farm Bureau Mut.* (1993), Ind.App., 618 N.E.2d 31, 33. Insurers are free to limit coverage; however, all exceptions, limitations, and exclusions must be plainly expressed. *Id.* If an exclusion or limitation is not clearly expressed, any doubts will be construed against the contract drafter. *Id.* In determining the amount due for loss under an insurance policy, the true meaning of the contract must be ascertained from all of its provisions, and not from the literal or technical construction of an isolated or special clause. *Id.*

Farmers contends the trial court erred when it found that the Policy was ambiguous and applied Kentucky law to invalidate the Policy's set-off provision.

 When interpreting the provisions of an insurance policy, we cannot extend the coverage delineated by clear and unambiguous language in the insurance contract. *Utica Mut. Ins. v. Ueding* (1977), 175 Ind.App. 60, 63, 370 N.E.2d 373, 376. However, where the language of an insurance policy is so ambiguous as to be susceptible of more than

one interpretation, the court will adopt the construction most favorable to the insured. *Allstate*, 618 N.E.2d at 33. A contract is ambiguous and susceptible to more than one interpretation when it can be shown that reasonably intelligent people on reading the insurance contract would honestly differ as to its meaning. *Id.*

 Farmers argues that § 3 [4] under the "Limits of Liability" is not a choice of law provision and "by application of elementary rules of grammar and fundamental rules of contract construction, it is apparent that the provision is not ambiguous and does not require the application of Kentucky law in determining the validity of the [set-off] provision." Appellant's Brief at 13–14. Farmers presents a grammatical analysis of § 3, stating that the independent clause defines its maximum liability, and the dependent clause indicates that "these maximums could be increased if required by the law of the state of the occurrence." *Id.* at 14. However, Farmers asserts that the law of the state of the occurrence only applies to the limits of Farmers' liability under the underinsured motorist provision and not to any other part of the Policy.

Further, it argues that the set-off provision [5]

is *not* located in the "Limits of Liability" portion [of the Policy]. Rather, it is located in a completely separate part of the uninsured motorist coverage entitled "Other Insurance." [6]

The language "Subject to the law of state of occurrence" upon which [Tyson and Brown] rely simply does not apply to the [set-off] provision contained in a separate part of the [P]olicy.... Nor does [that language] affect the limits of the [P]olicy as shown in the declarations.

---

**4.** 3. Subject to the law of the **state** of the **occurrence,** we will pay no more than these maximums regardless of the number of vehicles insured, **insured persons,** claims, claimants, policies or vehicles involved in the **occurrence.** (R. 18) (emphasis in original).

**5.** 2. The amount of Uninsured Motorist Coverage we will pay under Additional Definitions 3b shall be reduced by the amount of any other

**bodily injury** coverage available to any party held to be liable for the **accident.** (R. 18) (emphasis in original).

**6.** Farmers fails to note that the "Other Insurance" portion of the Policy immediately follows the "Limits of Liability" portion and both portions are on the same page in the Policy. (R. 19).

*Id.* at 15 (emphasis in original; footnote added).

■ Farmers' analysis of the Policy is plausible; however, the Policy does not contain a section explaining that its limit of liability may be set-off without affecting the limit of liability.[7] We cannot find any reason why a set-off provision which reduces Farmers' limit of liability to an insured should not be subject to a general provision about the limit of an insurer's liability. Thus, an equally plausible argument could be made that any modification of Farmers' liability, like that described in the set-off provision, affects the limits of Farmers' liability. A provision like § 3, which makes the limits of Farmers' liability subject to the law of the state of the occurrence, would likewise make the modifications of the limits of liability subject to the law of the state of the occurrence.

We cannot find in our reading of the Policy, nor does Farmers' argument provide us with, a reason for deciding that one interpretation of the relevant portions of the Policy can be construed within the four corners of the insurance contract and defines the intentions of the parties when contracting. Additionally, we find our explanation reasonable in light of our standard which demands that the court determine the amount due for loss under an insurance policy be ascertained from all of its provisions, and not from the literal or technical construction of an isolated or special clause. *Allstate,* 618 N.E.2d at 33.

The case before us is not one in which the parties simply favor different interpretations of the Policy, but one in which reasonably intelligent people honestly differ as to its meaning. Thus, the trial court did not err when it found that the language of Tyson's Policy is ambiguous and decided to apply Kentucky law. *See also Meridian Mut. Ins. v. Richie* (1989), Ind., 540 N.E.2d 27, 30 ("Courts should strive to give effect to the reasonable expectation of the insured; an ambiguous policy should be construed to further its basic purpose of indemnifying the insured for [her] loss.").

Judgment affirmed.

CHEZEM, J., concurs in result.

BARTEAU, J., dissents with separate opinion.

BARTEAU, Judge, dissenting.

I respectfully dissent because I do not agree that the insurance policy contains a choice of law provision; consequently, under the "most intimate contacts" test, Indiana law applies and Farmers has a right to set off the amount it owes to Brown under the underinsured motorist policy by the amount payable to Brown under the liability coverage of the underinsured motorist.

This case revolves around the interpretation of § 3 under "Limits of Liability" of the underinsured motorist policy. Brown argues that § 3 is a choice of law provision that provides for the application of Kentucky law to the set-off dispute. Farmers argues that § 3 is not a choice of law provision, that it is unambiguous, and that it does not provide for the application of Kentucky law to the set-off dispute. Thus, Farmers argues that under Indiana's conflict of laws rules, Indiana law determines whether Farmers is entitled to the set-off.[1]

Clearly the policy does not contain a general choice of law provision providing that

---

**7.** Farmers might argue that "set-off" and "limit of liability" are terms of art within the insurance industry and that it is understood within the industry that set-off provisions do not affect a policy's limit of liability. However, this argument would be without merit in light of the title of the Policy which reads: "Your E–Z–Reader Car Policy," and the introduction to the Policy which reads: "Your E–Z–Reader Car Policy offers protection tailored to your needs. It is written in non-technical easy-to-read style."

**1.** Brown argued in her motion for summary judgment that Farmers was estopped from arguing that Indiana law should apply. However, Brown does not pursue that argument on appeal in response to Farmers's argument that it is not estopped, so we need not address that issue. Brown also does not respond to Farmers's argument on appeal that under Indiana's "most intimate contacts" rule, the policy should be interpreted in accordance with Indiana law. Thus, because there is not a choice of law provision in the policy to dictate otherwise, Farmers need only make a prima facie showing that the "most intimate contacts" rule results in application of Indiana law to the policy. *See Coleman v. State* (1992), Ind.App., 588 N.E.2d 1335, *trans. denied.*

the policy will be interpreted and construed in accordance with the laws of a particular jurisdiction. Thus, the choice of laws rule of the state where the action is brought, Indiana in this case, will determine the law under which the policy will be interpreted and construed. *Hubbard Mfg. Co. v. Greeson* (1987), Ind., 515 N.E.2d 1071, 1073; *see also Homer v. Guzulaitis* (1991), Ind.App., 567 N.E.2d 153, *trans. denied; Maroon v. State* (1980), Ind.App., 411 N.E.2d 404. In Indiana, the "most intimate contacts" rule is applied in contract actions to determine what law will govern the transaction. *Eby v. York–Division, Borg–Warner* (1983), Ind. App., 455 N.E.2d 623. Applying the most intimate contacts rule in *Travelers Ins. Companies v. Rogers* (1991), Ind.App., 579 N.E.2d 1328, this court concluded that Michigan law governed the insurance contract action where the insured was a Michigan resident and the insurance contract was signed in Michigan. Several portions of the contract referred specifically to Michigan law and the policy contained numerous provisions for bringing it into compliance with Michigan insurance law. Indiana's only connection with the action was that it was where the accident occurred and the injured plaintiff was a resident of Indiana.

Here, the insured is an Indiana resident. The insured vehicle is registered and garaged in Indiana, and the insurance policy noted that it was an Indiana edition. The only contacts with Kentucky are that the accident occurred in Kentucky and the injured claimant is a resident of Kentucky. Farmers has made a prima facie showing that under the most intimate contacts rule, Indiana law should govern interpretation and construction of the policy.

Under Indiana law, as the majority correctly notes, insurers are free to limit coverage, but all exceptions, limitations, and exclusions must be plainly expressed and any doubts will be construed against the contract drafter. *Allstate Ins. Co. v. United Farm Bureau Mut. Ins. Co.* (1993), Ind.App., 618 N.E.2d 31, 33. If the contract is clear and unambiguous, the language of the contract must be given its plain meaning. *Sharp v. Indiana Union Mut. Ins. Co.* (1988), Ind.

App., 526 N.E.2d 237, 239, *reh'g denied, trans. denied.* While, as the majority notes, a contract will be found ambiguous if reasonable persons upon reading the contract could differ as to the meaning of its terms, in insurance policies an ambiguity is not established simply because one party asserts an interpretation contrary to that asserted by the opposing party. *Id.* Further, "in determining the amount due for loss under an insurance policy, *the true meaning of the contract must be ascertained from all of its provisions, and not from the literal or technical construction of an isolated or special clause.*" *Id.* (my emphasis). Here, the majority concludes that § 3 under the "Limits of Liability" is ambiguous and thus the trial court properly decided to apply Kentucky law. I do not agree that § 3 is ambiguous.

The uninsured motorist policy contains the following sections:

**Limits of Liability**

The limits of liability shown in the Declarations apply subject to the following:

1. The limit for "each person" is the maximum for **bodily injury** sustained by any person in any one **occurrence.** Any claim for loss of consortium or injury to the relationship arising from this injury shall be included in this limit.

If the financial responsibility law of the place of the accident treats the loss of consortium as a separate claim, financial responsibility limits will be furnished.

2. Subject to the limit for "each person", the limit for "each occurrence" is the maximum combined amount for **bodily injury** sustained by two or more persons in any one **occurrence.**

3. Subject to the law of the **state** of the **occurrence,** we will pay no more than these maximums regardless of the number of vehicles insured, **Insured persons,** claims, claimants, policies, or vehicles involved in the **occurrence.**

**Other Insurance**

1. We will pay under this coverage only after the limits of liability under any applicable **bodily injury** liability bonds or policies have been exhausted by payment of judgments or settlements.

2. The amount of Underinsured Motorist Coverage we will pay under Additional Definitions 3b [includes an underinsured vehicle in the definition of **Uninsured motor vehicle**] shall be reduced by the amount of any **bodily injury** coverage available to any party held to be liable for the **accident.**

3. Except as provided in paragraph 2 above, if any other collectible insurance applies to a loss covered by this part, we will pay only our share. Our share is the proportion that our limits of liability bear to the total of all applicable limits.

4. We will not provide insurance for a vehicle other than **your insured car,** unless the owner of that vehicle has no other insurance applicable to this part.

5. If any applicable insurance other than this policy is issued to you by us or any other member company of the Farmers Insurance Group of Companies, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability.

R. 18–19 (emphasis in original). When read in context with the other sections set out above, § 3 under "Limits of Liability" unambiguously states that regardless of the number of vehicles insured or involved in the accident and regardless of the number of persons, claims or policies involved in the accident, the *maximum* liability will be as stated in the Declarations and §§ 1 and 2 under "Limits of Liability," unless the law of the state of the occurrence *requires* a higher minimum liability. This provision says absolutely nothing about reducing a pay out subject to the laws of the state of the occurrence. I do not agree with the majority that this is a "general provision about the limit of ... liability" applicable to a reduction in the amount paid out. Section 2 under "Other Insurance" clearly and unambiguously states that the amount paid out will be reduced by the amount available from an underinsured motorist and this section is not subject to the law of the state of occurrence. This is a valid provision under Indiana law, *see* Ind. Code 27–7–5–5, and Farmers is entitled to the set-off.

I would reverse the trial court and order summary judgment in favor of Farmers.

