Olajide OGUNSUADA

v.

**GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA.**

**No. 95–311–Appeal.**

Supreme Court of Rhode Island.

June 25, 1997.

Paul S. Cantor, Providence, for Plaintiff.

C. Russell Bengtson, Patricia A. Buckley, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

BOURCIER, Justice.

This matter comes before us on the appeal of the plaintiff, Olajide Ogunsuada (plaintiff), from a final judgment entered in favor of the defendant, General Accident Insurance Company of America (General Accident), on General Accident's motion for summary judgment filed in the Superior Court.

On December 31, 1987, Philip Guilbeault (Guilbeault) was involved in a motor-vehicle accident with the plaintiff in Providence, Rhode Island. At the time of the accident Guilbeault was insured by General Accident under a Massachusetts policy.

General Accident was notified of the accident on January 21, 1988, through General Accident's counsel. General Accident acknowledged receipt of the claim on February 1, 1988. After attempts at negotiating a settlement failed, the plaintiff filed suit against Guilbeault on July 2, 1990. Guilbeault was served with notice of that action through the Registrar of Motor Vehicles and by certified mail mailed to his resident address at 25 County Street in Blackstone, Massachusetts. The return receipt for the certified mail was signed, but the signature was unintelligible.

A copy of the summons and complaint was also sent to General Accident. In response, General Accident assigned defense counsel to the case. On July 26, 1990, General Accident sent a letter to Guilbeault acknowledging receipt of the complaint. By that letter General Accident also informed Guilbeault of the name, address, and telephone number of defense counsel and indicated that it was necessary for Guilbeault to advise General Accident of any changes in his address. On August 10, 1990, defense counsel for General Accident entered his appearance on behalf of Guilbeault.

In September 1990, the plaintiff served Guilbeault with interrogatories, which were forwarded to Guilbeault on September 17, 1990, by General Accident's defense counsel. Those interrogatories were sent to the 25 County Street address. After receiving no response to the interrogatories, General Accident sent two additional letters by certified mail to Guilbeault on October 10 and October 24, 1990. The return receipt for the October 24 letter, in which General Accident reminded Guilbeault of the provision in his policy requiring that he cooperate with General Accident in the defense of his action or risk losing his coverage, was signed by a "Richard Guilbeault," apparently a relative of Guilbeault's. No response to those letters, however, was ever received by General Accident.

On March 12, 1991, General Accident sent Guilbeault yet another letter that requested him to contact defense counsel immediately regarding his then-pending interrogatories. That letter was returned to General Accident with a notation indicating a forwarding address of 165 Main Street, Blackstone, Massachusetts. The letter was remailed to that Main Street address, but still no response was received.

On October 7, 1991, the plaintiff's complaint was the subject of court-annexed arbitration. Liability was contested by General Accident, but Guilbeault, still not reached, did not appear or testify. As a result, the defense to the plaintiff's claim was presented solely through documents prepared by Gen-

eral Accident's claim investigators and counsel's argument. Notwithstanding Guilbeault's absence, judgment was entered for the defendant. The plaintiff rejected the arbitrator's decision and appealed to the Superior Court.

In May 1992, General Accident hired Diamond Skip Tracing (Diamond) in order to definitively locate Guilbeault. Diamond confirmed the Main Street address. General Accident again sent a letter by certified mail to that address, informing Guilbeault that he was in danger of being defaulted in the pending civil action for failure to answer plaintiff's interrogatories. He was further reminded that his failure to cooperate with General Accident would result in a voiding of the policy. The certified letter was returned as unclaimed and remailed by General Accident by general mail to that same address. Another letter giving Guilbeault seven days to respond before General Accident discontinued its defense of the action was sent on June 5, 1992.

A final letter was sent on July 27, 1992, to Guilbeault and requested that he respond within seven days. On September 10, 1992, after receiving no response to the July 27 letter, a claims representative from General Accident called the telephone number he had for Guilbeault and was informed by a child who answered the telephone call that Guilbeault had moved to Florida.

Counsel for General Accident then filed his motion to withdraw as counsel for Guilbeault and forwarded a copy thereof to Guilbeault at his County Street address on September 10, 1992. The return receipt for the letter was signed "M. Guilbeault." The motion, when called for hearing on September 30, 1992, was passed. A new motion to withdraw was filed on October 5 and assigned to be heard on October 14, 1992.[1] The plaintiff objected to defense counsel's motion to withdraw but did not press that objection at the time of the hearing on the motion. The motion was granted by the trial justice sitting on the formal and special cause calendar. A copy of the resulting order was sent to Guilbeault at

the 25 County Street address on October 15, 1992. No appeal was taken therefrom.

Some eighteen months later, on April 21, 1994, the plaintiff recovered a default judgment in the Superior Court against Guilbeault in the amount of $22,937.75 plus interest and costs. In an attempt to collect that judgment, the plaintiff filed the present action against General Accident, allegedly pursuant to G.L.1956 § 27–7–2. General Accident moved for summary judgment on the basis of Guilbeault's lack of cooperation that, General Accident contended, voided the policy. General Accident asserted further that pursuant to § 27–7–2 the plaintiff had no rights against General Accident other than those rights that were derivative of Guilbeault's rights under the policy. General Accident took the position that because the policy was voided, which eliminated Guilbeault's rights under the policy, the plaintiff stood in no better position under the policy than did Guilbeault. The plaintiff asserted in response to General Accident's voiding-of-policy contention that the policy was ambiguous concerning the effect of Guilbeault's failure to cooperate and that that ambiguity created a question of fact that should not be decided on a motion for summary judgment. After hearing the arguments of counsel, the trial justice granted summary judgment in favor of General Accident. We conclude that the trial justice's determination was correct and that the plaintiff has no right of recovery against General Accident pursuant to the insurance policy that had existed between General Accident and Guilbeault but had been voided by Guilbeault's failure to cooperate.

In the policy provision insuring Guilbeault that is entitled "Our Agreement," General Accident agreed "to provide the insurance protection [Guilbeault] purchased for accidents which happen while this policy is in force." In that same section Guilbeault, in return for General Accident's insurance protection, agreed "to pay premiums and any Merit Rating surcharges when due and *to cooperate with us in case of accidents or*

---

1. There is no evidence in the record indicating that Guilbeault was ever sent notice of the hear-

ing date for the second motion to withdraw.

claims." Another policy section entitled "When There Is An Accident Or Loss" provided that "after an accident or loss, *you* or anyone else covered under this policy *must cooperate with us in the investigation, settlement and defense of any claim or lawsuit.* We must be sent copies of all legal documents in connection with the accident or loss." (Emphases added.) Those two provisions clearly and unambiguously set forth the mandate that Guilbeault was requested to cooperate with General Accident in the defense of any claim brought against Guilbeault.

■ Ordinarily an insured's failure to cooperate with the insurer after an occurrence giving rise to a claim against the insured creates a question of fact about whether the insurer has been so prejudiced by the insured's noncooperation as to permit the insurer to void the policy of insurance. *See, e.g., American Guarantee and Liability Insurance Co. v. Chandler Manufacturing Co.,* 467 N.W.2d 226 (Iowa 1991). When, as in this case, a plaintiff is a judgment creditor of the insured, Guilbeault, "the burden of going forward with the evidence on the issue" of Guilbeault's noncooperation was upon defendant insurer. *Id.* at 229; *see also Anderson v. Slayton,* 662 S.W.2d 575, 577 (Mo.Ct.App. 1983); 8 John Alan Appleman et al., *Insurance Law and Practice,* §§ 4771–4773 (1981); 14 Mark S. Rhodes, *Couch Cyclopedia of Insurance Law,* § 51:191 (rev.2d ed.1982); 7A Am Jur 2d *Automobile Insurance* § 405 (1980); Romualdo P. Eclavea, Annotation, *Liability Insurance: Failure or Refusal of Insured to Attend Trial or to Testify as Breach of Co–Operation Clause,* 9 A.L.R.4th 218, 223–27 (1981).

There exists, however, a notable minority view that an insured's unexcused or unexplained failure to cooperate is itself sufficient to void the policy and relieve the insurer of its liability without a showing of prejudice to the insurer. 9 A.L.R.4th at 236–56.

■ In *Marley v. Bankers' Indemnity Insurance Co.,* 53 R.I. 289, 292, 166 A. 350, 351 (1933), we concluded that a cooperation provision was "not a covenant but a condition which if not complied with gives the insurer the right to terminate the policy."

In that case, Marley, the plaintiff, had obtained a judgment after trial against the defendant's insured and then proceeded on that judgment against the defendant insurer in a separate action. The insurer, Bankers Indemnity Insurance Co., interposed as one of its defenses the failure of its insured to cooperate. The trial justice, in the plaintiff's direct action against the insurer, concluded that the insurer failed to present sufficient evidence of the insured's alleged failure to cooperate, treating that defense as a question of fact, and found that the insurer could not avoid its liability on its policy.

■ *Marley,* it appears, finds itself in accord with what can be said to be the majority view that cooperation clauses in automobile liability policies are regarded as conditions precedent,[2] "so that no rights would accrue under the policy until they were satisfied." 8 Appleman, § 4771 at 214–15. Any alleged breach of a cooperation clause, however, has to be substantial as well as material in order to relieve the insurer of its liability under the policy, and a mere technical or inconsequential lack of cooperation would be insufficient to void the policy and the liability of the insurer. 8 Appleman, at § 4773; 14 Rhodes, at § 51:190.

■ In this case, the plaintiff is a judgment creditor seeking to recover against a judgment debtor's insurer under the debtor's automobile liability insurance policy. In such a situation we recognize the clear rule that the plaintiff stands in the shoes of the defendant's insured and is subject to any defenses that the insurer would have against its insured. When as here, the dispute and the defense involved concern an alleged breach of an insurance policy cooperation clause that is a condition precedent to the insurer's lia-

2. Other courts have construed cooperation clauses as a condition subsequent necessitating proof by the insurer of facts sufficient to relieve the insurer of liability. *See, e.g., Anderson v. Slayton,* 662 S.W.2d 575, 577 (Mo.Ct.App.1983); 7A Am. Jur.2d, *Automobile Insurance* § 463 (1980); Romualdo P. Eclavea, Annotation, *Liability Insurance: Failure or Refusal of Insured to Attend Trial or to Testify as Breach of Co–Operation Clause,* 9 A.L.R.4th 218, 236 (1981).

bility, we believe that we should adopt the majority rule and reasoning recently expressed by the Supreme Court of Iowa in *American Guarantee and Liability Insurance Co., supra.*[3] There the Iowa court held that in order for a party claiming entitlement to recovery under a tort-feasor insured's policy, he or she must prove compliance by the insured with the cooperation clause policy by showing (1) that the insured substantially complied with the condition precedent cooperation clause, (2) that the insured's failure to cooperate was excused or waived, or (3) that the insured's failure to comply was not prejudicial to the insurer. In adopting that three-pronged rule, we note with similar approval the Iowa court's statement that the insurer's and the insured's obligations under an insurance policy's cooperation clause are reciprocal and require the insured to cooperate in good faith with the insurer and the insurer in good faith to use reasonable diligence in obtaining the insured's cooperation. 467 N.W.2d at 229. *See also* 9 A.L.R.4th at 256.

■ Applying the rules we have outlined to the facts in the record before us, we conclude that the plaintiff bore the burden of proving that Guilbeault had substantially complied with the cooperation provision in his liability insurance contract, that any failure on his part to do so was either excused or waived, or that his failure to comply was not prejudicial to the defendant insurer.

The record discloses that the plaintiff failed to meet his burden of proof in resisting the defendant's motion for summary judgment. If the motion record is viewed in the light most favorable to him, there is no evidence in that record by way of affidavit or pleading that could even remotely suggest to the motion justice that Guilbeault, despite diligent effort by General Accident for him to do so, had ever made any attempt to cooperate with General Accident in the defense of the plaintiff's action. On facts similar to those reflected in the record before us, the Massachusetts court in *Polito v. Galluzzo,* 337 Mass. 360, 149 N.E.2d 375 (1958), denied recovery against an insurer. *See also Foshee*

*v. Insurance Company of North America,* 359 Mass. 471, 269 N.E.2d 677 (1971).

In *Marley,* we concluded that "when a question of cooperation is raised it usually has to be determined as a question of fact." *Marley,* 53 R.I. at 292, 166 A. at 352. Therefore, although the factual question of cooperation should not ordinarily be decided on a summary judgment motion, here all facts suggest only one conclusion, namely, that Guilbeault did not cooperate with General Accident in the defense of his case. The trial justice accordingly did not err in granting General Accident's motion for summary judgment. *See DeNardo v. Fairmount Foundries Cranston, Inc.,* 121 R.I. 440, 448, 399 A.2d 1229, 1234 (1979) ("'where the facts suggest only one reasonable inference, the trial justice may properly treat the question as a matter of law'").

■ The plaintiff contends that despite Guilbeault's unexplained absence § 27–7–2 permits him to file a direct action against General Accident because Guilbeault could not be located by him or General Accident. The plaintiff fails to recognize, however, that although § 27–7–2 permits a direct action against an insurer in a situation in which the individual insured cannot be located, the plaintiff in such an action merely "'succeed[s] to the insured's rights against the insurer'" and does not, through such an action, "enlarge the liability of the insurer beyond the limits stated in the policy." *Barber v. Canela,* 570 A.2d 670, 671 (R.I.1990). *See also Polito,* 149 N.E.2d at 377; *Muzichuk v. Liberty Mutual Insurance Co.,* 2 Mass.App. Ct. 266, 311 N.E.2d 558, 561–62 (1974). Thus, "the right of the claimant is merely derivative * * * and is therefore dependent upon the existence of liability of the insurer to the insured under the contract of insurance." *Barber,* 570 A.2d at 671. Since Guilbeault was not entitled to continued coverage under the policy because he failed to cooperate with General Accident in the preparation of his defense, the plaintiff, as successor to Guilbeault's rights under the policy agreement, was not entitled to any greater right of coverage and thus could not recover against

---

**3.** The Iowa decision reflects what is generally considered the prevailing rule to be applied in breach-of-cooperation clause cases. *See* 8 John Alan Appleman et al., *Insurance Law and Prac-* *tice,* §§ 4771–4773 (1981); 14 Mark S. Rhodes, *Couch Cyclopedia of Insurance Law,* §§ 51:189–51:195 (rev.2d ed.1982).

General Accident directly pursuant to § 27–7–2. *Muzichuk,* 311 N.E.2d at 561–62.

■ The plaintiff also posits that the language of the policy between General Accident and Guilbeault was ambiguous concerning whether there would be coverage following Guilbeault's failure to cooperate with General Accident in the defense of the plaintiff's claim. The plaintiff focuses on that section of the policy setting forth the terms of Massachusetts's compulsory insurance.[4] That policy section provided that "we [General Accident] must pay their claims even if false statements were made when applying for this policy or your auto registration. We must also pay even if you or the legally responsible person fails to cooperate with us after the accident." The plaintiff's contention in this regard is without merit. That quoted policy language is preceded by the specific limitation that "[t]he *law* [that is, the Massachusetts compulsory insurance law] provides a *special protection* for anyone entitled to damages *under this Part.*" (Emphasis added.) Thus, it is clear that the provisions of the policy providing for coverage in the absence of cooperation applied only to accidents covered by that part of the policy providing for Massachusetts's compulsory insurance and not to the part of that policy providing for the optional insurance, which is the part that covered the accident involving the plaintiff. That optional insurance, since it was contained in a part of the insurance policy that was completely separate and distinct from the Massachusetts compulsory insurance policy section, was subject to the general cooperation provisions noted and quoted earlier.

Accordingly, for all the foregoing reasons, the plaintiff's appeal is denied and dismissed. The final judgment appealed from is affirmed, and the papers in this case are remanded to the Superior Court.

GOLDBERG, J., not participating.

**4.** Although not applicable to the facts present in this case, see *Coburn v. Fox,* 134 Mich.App. 190, 350 N.W.2d 852 (1984). *See also* Annotation 31 A.L.R.2d 645 (1953).